## HOWARD v. MERCURY RECORD CORPORATION et al.

### No. 12600.

United States Court of Appeals
Fifth Circuit.

Nov. 29, 1949.

Rehearing Denied Dec. 29, 1949.

---

Winston B. McCall, Birmingham, Ala., Harry B. Cohen, Birmingham, Ala., Williams S. Pritchard, Birmingham, Ala., for appellant.

Abe Berkowitz, Birmingham, Ala., Mayer Goldberg, Chicago, Ill., for appellees.

Before HUTCHESON, McCORD, and RUSSELL, Circuit Judges.

RUSSELL, Circuit Judge.

The appellant is a wholesale dealer in phonograph records and the appellee is a producer and distributor of such records. As complainant in the trial court, appellant asserted by several counts, specified claims for damages against the defendant, appellee, alleged to have been sustained as the result of breaches of an oral contract between the parties. There was a jury trial, and upon the conclusion of the complainant's evidence, the Court instructed the jury to return a verdict in favor of the defendant, and thereafter entered a final judgment in accordance with the directed verdict. This action of the Court is by the present appeal assigned as error, it being contended, primarily, that there was suffi-

cient evidence upon which the jury could properly have returned a verdict in favor of the appellant.

Except as to one statement with which we can not agree (that the payment of one percent of the purchases towards the expense of appellee's national advertising expense was required by the original agreement), appellant's counsels' summary of the terms of the contract as set forth in the footnote is a fair statement of its terms.[1] It should be observed here that no provision of the contract either expressly or by implication bound the appellant to continue as appellee's exclusive distributor, nor to continue for any specified time to purchase a minimum number of records of each release or to continue to purchase his essential requirements, or to continue to maintain an adequate inventory of Mercury records. It will further be observed that there is no time of duration of the agreement specified.

The evidence in behalf of the complainant was sufficient to establish that following the making of the agreement the appellant placed substantial orders with the appellee's predecessor in organization and business, and continued to do so throughout the year 1946, and that he employed an additional salesman and opened an office in Mississippi with another salesman and other employees, furnishing an automobile and the expenses of the Mississippi office, a new venture, and expended other sums in advertising and promoting the sales of Mercury records. Appellant made two payments of one percent of his purchases for appellee's national advertising, but this arrangement did not begin until after the inception of the contract, and he likewise surrendered his franchise to sell other lines of music records (though this was not required by the contract). In November, 1946, the exclusive distributorship feature of the agreement was confirmed by a written memorandum signed by the sales manager of the appellee and by appellant.[2] In this month agreement was reached between appellant and officers of the appellee by which his standing order for 500 records of each release was reduced to a specified number of each type of release. During the further course of dealing between the parties, in December, 1946, because of financial difficulties of the appellant, apparently caused by his failure to sell and collect as the result of a coal strike, the terms of sale were changed to a collect on delivery basis on records ordered, in accordance with the quantities of the reduced standing order. In February, 1947, it was agreed between the parties that appellant would go off the standing order basis and order from samples until he got in a better financial condition when the parties would go back on

1. "The contract sued on was an agreement entered into in January, 1946, (R. 77–79) by and between the Appellant and Mercury Radio & Television Corporation, predecessor in interest of the Appellee, wherein Appellant agreed:

"1. To purchase a minimum of 500 records per each new release of Mercury records, later increased to 800. (R. 138, 86.)

"2. To purchase his essential requirements to maintain an adequate inventory of Mercury records. (R. 141; 87.)

"3. To pay 1 per cent of his purchases each month 'to help, Mercury Record take care of national advertising in trade magazines.' (R. 145.)

"4. To put on more salesmen to promote Mercury records. (R. 79.)

"5. To stimulate the sales of Mercury records by sales advertising. (R. 141.)

"Appellee agreed:

"1. To give Appellant exclusive distributorship of Mercury records in Alabama, Mississippi and Northwest Florida. (R. 78, 84.)

"2. To sell to Appellant all Mercury records that he required. (R. 138.)

"3. To buy Appellant's entire stock of Mercury records at cost price, in the event of cessation of business relations. (R. 144; 163.)

"4. To accept return of 5 per cent of purchases twice a year. (R. 116.)"

2. "'November 6, 1946. Monarch Sales Company has exclusive rights to sell Mercury records in Alabama and Mississippi and it is agreed that if any Mercury records are sold outside of this area that it constitutes grounds of forfeiture of the Mercury franchise. Signed C. E. Howard, Owner, Monarch Sales Company, and Allen Parkinson, Sales Manager, Mercury Radio and Television Corporation.'"

the regular basis. Appellee had, as the result of the unsatisfactory financial condition and business of appellant, permitted other distributors to sell its records in Alabama, but, according to the letters in evidence, subsequently moved to exclude the other parties from the territory and reinstate appellant. No shipments of records were made by appellee subsequent to July 9, 1947, though at that time appellant had forwarded orders for several thousand records. On October 17, 1947, appellee notified appellant that "in the event you have any claim of any kind for any franchise you are hereby notified that the same is hereby revoked and annulled for all purposes."

There was evidence which would have authorized a finding that the appellee breached the agreement prior to the written cancellation by knowingly selling records to others in appellant's exclusive territory, and in failing to fill appellant's orders. The evidence also presents the question that the appellee had failed to take back appellant's stock of Mercury records at cost price.

In granting the motion for peremptory instructions, the trial Judge stated his reasons therefor.[3] In view of the full statement we have made of the evidence, no extended discussion is necessary since the application of the legal principles we find proper here will become apparent by mere statement.

 The construction and application of the agreement between the parties by the trial Judge was correct in part, and incorrect in part, and the effect of the incorrect portion of his ruling renders erroneous the withdrawal of the entire claim of the complainant from the consideration of the jury. The Court correctly held that the evidence showed a contract of indefinite duration, and equally correctly that there was a lack of mutuality of obligation. While these omissions and difficulties effectively barred the complainant from recovery of any loss or damage sought to be predicated upon the contract to the extent it was executory, the same result was not required nor. legally permitted as to any damage sustained for breaches of the agreement to the extent that it had become executed. It may be stated as the general rule that a contract though not enforceable at its inception because of lack of consideration and mutuality, may nevertheless become valid and binding to the extent that it has been performed. Willard, Sutherland & Company v. United States, 262 U. S. 489, 43 S.Ct. 592, 67 L.Ed. 1086; 17 C. J.S., Contracts, § 100c, p. 448. The rule

---

3. "Gentlemen, I will state this in all frankness. I was very much impressed with the manner in which Mr. Howard testified. I think he told the truth and I was very much impressed with his frankness and his recollection, but I don't think the Plaintiff has made out a case on any count in the complaint. That is my opinion at this point. I will tell you why. I don't think that there was a contract for the exclusive distributor rights in this case which was, which consisted in mutuality of obligations and therefore it would not be enforceable as for a breach against Defendant. The only question that occurs to me in this case is whether or not there was an obligation imposed by the terms of a mutual understanding on the Defendant to repurchase the inventory at the time of cessation of business, and I am satisfied that according to Mr. Howard's testimony that initially there was that agreement, in consideration of his agreement to purchase a minimum number of records of

each release. That in my judgment would constitute sufficient mutuality of understanding to support that obligation or that duty to repurchase the inventory on hand. However, it appears by mutual agreement during the term of the business negotiations that there was a novation in that term of the agreement between the parties whereby Mr. Howard at either his request or with his consent was relieved of the obligation to purchase a minimum number of records and that therefore there was no enforceable obligation. I am going to give the directed verdict on motion of the Defendant."

In overruling the appellant's motion for a new trial the Court stated he used the term novation loosely and that "it would be more accurate to have said that plaintiff's evidence, viewed in its strongest aspect disclosed a contract of indefinite duration which was terminated by mutual agreement of the parties thereto and not merely modified as to one or more of its terms."

is well recognized in Alabama. Sherrill v. Alabama Appliance Co., 240 Ala. 46, 197 So. 1; Louis Werner Sawmill Co. v. Vinson & Bolton, 220 Ala. 210, 124 So. 420; Jones v. Lanier, 198 Ala. 363, 73 So. 535, and cases cited. The authorities are likewise clear that such an agreement, which is not obligatory upon one party and, because of this, or expressly, is terminable at his will, is likewise terminable at will by the opposite party but subject, however, to any liability arising from the contract to the extent executed. See authorities cited and Hazlewood v. Empire Gas & Fuel Co., 5 Cir., 268 F. 829; Miami Coca-Cola Bottling Co. v. Orange-Crush Co., 5 Cir., 296 F. 693; Terre Haute Brewing Co. v. Dugan, 8 Cir., 102 F.2d 425; Curtiss Candy Co. v. Silberman, 6 Cir., 45 F.2d 451; E. I. Du Pont De Nemours & Co. v. Claiborne-Reno Co., 8 Cir., 64 F.2d 224, 225, 89 A.L.R. 238. Each of the three last cases are cited by the appellee in support of its contention of unenforceability in toto of the agreement. Neither of these cases hold anything contrary to the ruling here made, for in each of them the claim for damages was sought to be predicated upon the executory feature of the contracts there involved.

 We think it clear from the evidence stated above that it is not shown that a termination of the contract by mutual agreement resulted from a modification of one of the terms of the agreement with reference to the number of records required to be purchased. However, at most such evidence could only present a question for the jury as to the extent and effect of the modification or termination by mutual agreement. Jeff D. Jordan & Co. v. Yancey & Abernathy, 242 Ala. 385, 6 So.2d 473. Likewise, there is no basis for a finding of forfeiture by sales outside the designated territory, as a matter of law. Under the circumstances of this case the agreement was not void under the statute of frauds of Alabama, as contended by the appellee. 1940 Code of Alabama, Title 20, Section 3, and Title 57, Section 10.

In the light of the foregoing, it is clear that as to any claim for damages established during the existence of the contract and prior to its termination, the evidence was sufficient to present a question for the jury. On the other hand, it is likewise clear that this evidence showed no right of recovery for loss of future profits or items of damage which are necessarily predicated upon circumstances existing beyond the actual termination of the contract, whether this date might be shown by the evidence as fully developed to be established by mutual agreement or the definite termination by letter.

The judgment of the trial court is reversed and the case remanded for further proceedings not inconsistent herewith.