282 So.2d 49

**Jean E. MARCRUM**

v.

**Jim EMBRY, Jr., d/b/a Embry Oil Company.**

**SC 201.**

Supreme Court of Alabama.

Aug. 30, 1973.

Carl E. Chamblee, Birmingham, for appellant.

H. E. Holladay, Pell City, for appellee.

McCALL, Justice.

The appellant filed his bill for a declaratory judgment in this case on the equity side of the court, praying to have declared null and void several written instruments that were contemporaneously executed by the appellant and the appellee, involving the lease of a gasoline filling station.

The parties, through their solicitors made and entered into, and filed in the cause, at the trial, a written stipulation upon which they submitted the case for a final decree. From this stipulation, and the record, it appears that on May 13, 1966, the appellant and the appellee, contemporaneously executed reciprocal leases covering a common lot or parcel of real property with the improvements thereon. The appellant who owned the real property executed the prime lease to the appellee, a distributor and dealer in gasoline and oil products. The initial term of the prime lease was for ten years with an option to extend the lease for an unstated number of additional years. The appellee lessee was granted the option of cancelling the lease at any time by giving the lessor sixty days notice. No such option to cancel was accorded the appellant lessor. The appellant lessor agreed to maintain the improvements on the real property. The filling station equipment·thereon was to remain the property of the appellee lessee, he having the right or privilege of painting the buildings and improvements on the leased property in a color scheme in common with that of his service stations generally. The lessee was given the right to assign the lease or sublet the property.

In return for this lease agreement, the appellee paid an agreed rental of twenty dollars a month. These payments were stated to be sufficient consideration also for all options granted in the lease by the lessor to the lessee. As a further consideration for the lease of the premises as set out in a supplemental agreement of even date, and pursuant to it, the appellee promised to deliver and did deliver to the appellant two thousand dollars for the purpose of making improvements on the leased property, repayment of which, was to be amortized at the rate of two hundred dollars per year over a period of ten years, with repayment to be made through purchases of gasoline and oil products under an exclusive dealership between the parties, or, to be repaid on any default by the appellant as to the unamortized amount.

On the same day, the appellee leased the same property back to the appellant, under an instrument described as a Dealer Lease Agreement, and for the same initial term of ten years, and for an extended term of an unstated number of years after the initial terms, subject to being terminated at the end of the initial term, upon sixty days prior notice, at the option of the appellant. However, the appellant sublessee was without option to cancel the dealer lease prior to the expiration of the initial term of ten years. In return for the dealer lease, the appellant promised to pay the same amount of rent to the appellee as provided for in the prime lease. The appellant also agreed to maintain the buildings, structures, improvements and equipment in good condition and repair, and in addition, to pay all charges, licenses, permits and inspection fees, occupation and license taxes, and utility bills incurred in connection with the use and occupation of the premises. The appellant agreed therein not to assign or sublease the premises without the appellee's written consent, and to hold the appellee harmless against any and all claims or liability on account of personal injury or death arising out of the use or occupation of the leased premises, not caused by the appellee's own negligence. The dealer lease further provides that it is subject to all the terms and conditions of any lease under which the appellee, is entitled to possession of the premises, and if for any reason whatsoever the sublessor's tenancy is cancelled, terminated or surrendered then said dealer lease shall automatically terminate and end without further action by either party and without any liability on the part of the appellee sublessor.

The same day that the parties executed the aforementioned leases, the appellant also executed a written assignment to the appellee of the monthly rentals to become due him under the prime lease. This assignment by the appellant was for the purpose of convenience, and it compensated the rentals under the prime lease against those under the dealer lease. The parties also note in their stipulation that the appellant has sublet the premises to third parties under the terms of the agreements and has collected and retained the rentals, and the appellee has sold gasoline and oil products to the appellant and his assigns.

The parties stipulated that these agreements or undertakings constituted their entire agreement, which hereafter will be referred to as the agreement. They complied with all of the terms and provisions of the agreement and operated thereunder from May 13, 1966, until April 15, 1972, when the appellant became dissatisfied and requested the appellee to remove his equipment and other property from the leased premises, which the appellee failed or refused to do. Failing in his purpose, the appellant instituted this suit in equity to have the agreement declared null and void for lack of mutuality, lack of consideration, and as being in illegal restraint of trade.

There was no testimony taken in the trial of the cause, orally or otherwise, and the case was submitted to the court for a final decree upon the abovementioned stipulation filed in the cause. The court found that the agreement, under which the parties had operated for nearly six years, was valid and entered a final decree in favor of the appellee.

The appellant's primary argument for reversal is that since the agreement is terminable at appellee's will, it must be terminable at the appellant's will also, in order to give the agreement mutuality, without which the agreement would be unenforceable.

While the stipulation of the parties provides that the several instruments, executed by them represent their entire agreement, and, it is the law that where two or more instruments are executed contemporaneously by the same parties, in reference to the same subject matter, they generally are taken as one contract, and will be interpreted together, Evans v. Kilgore, 246 Ala. 647, 21 So.2d 842 (1945), Ingalls Iron Works Co. v. Ingalls, 256 Ala. 124, 53 So. 2d 847; Montgomery Enterprises v. Empire Theater Co., 204 Ala. 566, 86 So. 880 (1920); Restatement Contracts, § 235(c); Corbin on Contracts, § 549, we nonetheless are still confronted with the question of whether a lease, which gives one of the parties thereto the option to cancel or terminate it on a specified notice, is so lacking in mutuality as to be unenforceable.

■  A contract, lacking in mutuality, is unenforceable, because there is an absence of consideration moving, from one party to the other, Hill v. Rice, 259 Ala. 587, 67 So.2d 789 (1953), but when the promise of each party is legally sufficient consideration for the other's promise, there is no lack of mutuality, Lindner v. Mid-Continent Petroleum Corp., 221 Ark. 241, 252 S.W.2d 631.

The agreement here is a bilateral contract, since there are mutually dependent promises between the two parties to the agreement, a bilateral contract being one in which there are mutual promises between the parties to the contract, each party being both a promisor and a promisee.

■  As will be pointed out though, mutuality in a contract does not mean equal rights under the contract, or that each party is entitled to the same rights or covenants under the contract. So long as there is a valuable consideration moving from one side to the other, or there are binding promises on the part of each party to the other, there is adequate consideration for a valid contract.

Generally speaking, it seems well settled that an option, given a lessee to terminate the lease after a specified time of notice, cannot, under any circumstances, have the effect of creating a tenancy at will, nor make the lease void as wanting in mutuality. Guffey v. Smith, 237 U.S. 101, 35 S.Ct. 526, 59 L.Ed. 856 (1914); Indian Refining Co. v. Roberts, Ind.App., 181 N.E. 283, 290; H. P. Hood & Sons v. Heins, 124 Vt. 331, 205 A.2d 561 (1964); Keck v. Brookfield, 2 Ariz.App. 424, 409 P.2d 583; David Roth's Sons, Inc. v. Wright & Taylor, Inc., 343 S.W.2d 389 (Ky.App., 1961); Long Investment Co. v. O'Donnel, 3 Wis. 2d 291, 88 N.W.2d 674 (1958); 1 Williston on Contracts (3rd Ed.) § 105A, p. 425, n. 10. Appellant's argument in this case would seem to effect this imperfect result.

The argument in Standard Oil Co. v. Veland, 224 N.W. 467 (Iowa S.Ct.1929), was that because the lease reserved to the lessee the right to terminate at will upon ten days notice, and because it failed to reserve the same privilege to the lessor, the contract lacked mutuality, and was unenforceable. In that case the court said:

"* * * The point is not tenable. Some confusion of statement may be found in the books on this subject. If the lack of mutuality amounts to a lack of consideration, then the contract is invalid. But mere lack of mutuality in and of itself does not render a contract invalid. If mutual promises be the mutual consideration of a contract, then each promise must be enforceable in order to render the other enforceable. Though consideration is essential to the validity of a contract, it is not essential that such consideration consist of a mutual promise. * * *"

It is quite true that where one party reserves an absolute right to cancel or terminate a contract at any time, mutuality is absent. 17 C.J.S. Contracts § 100(6), p. 807. But a lease for a definite term is not converted into a tenancy at will by the fact that an option to surrender it before the expiration of the term is conferred upon the lessee, particularly so where the option rests upon a valuable consideration. 51C C.J.S. Landlord & Tenants § 157, p. 464. And more specifically it is said in 51C C.J.S. Landlord & Tenant § 27, p. 67:

"* * * The fact that a lease for a fixed period provides for its termination before the expiration of such period at the option of the lessor or the lessee will not prevent it from creating a valid term for years."

And again at § 91, p. 293 of the same volume:

"* * * [T]he lease may provide for its termination before the expiration of the term fixed at the option of either of the parties to the lease agreement. * * *"

An agreement is not invalid although it gives the lessor or the lessee alone the right to terminate the lease.

A somewhat similar contention as made here was well answered in the case of National Refining Co. v. Cox (K.C.Mo.App., 1933) 57 S.W.2d 778, 781, as follows:

"The fact that plaintiff reserved the right to cancel the lease upon giving thirty days' notice, while a like right is not given to the defendant, does not deprive it of its bilateral character. It is not necessary for mutuality that every covenant be mutual. 35 C.J. p. 1145; 13 C.J. p. 333. The rule is against construing a contract as unilateral and in favor of the construction that will make it valid, if such a construction can reasonably be made. 13 C.J. p. 333, B. 34."

In Lindner v. Mid-Continent Petroleum Corp., supra, the prime lessor, without an option to do so, attempted to cancel her lease of a filling station to the lessee oil

company. The lessee brought suit to recover possession of the lease-back filling station. In the prime lease, the lessee reserved the option to terminate at any time upon ten days notice to the lessor. In the lessee oil company's month to month sublease to the lessor's husband for the same rental, both parties retained the privilege to terminate upon ten days notice. The lessor had authorized the oil company to offset the rents to become due by each party against each other. The lessor attempted to cancel the prime lease to the oil company after the latter cancelled the sublease to the prime lessor's husband. The court held that the lessor's contention that the agreement lacked mutuality was without merit and said:

"* * * Williston has pointed out that the use of the term 'mutuality' in this connection 'is likely to cause confusion and however limited is at best an unnecessary way of stating that there must be a valid consideration.' Williston on Contracts, § 141. As we held in Johnson v. Johnson, 188 Ark. 992, 68 S. W.2d 465, the requirement of mutuality does not mean that the promisor's obligation must be exactly coextensive with that of the promisee. It is enough that the duty unconditionally undertaken by each party be regarded by the law as a sufficient consideration for the other's promise. Of course a promise which is merely illusory, such as an agreement to buy only what the promisor may choose to buy, falls short of being a consideration for the promisee's undertaking, and neither is bound. El Dorado Ice & Planing Mill Co. v. Kinard, 96 Ark. 184, 131 S.W. 460; Williston, § 104. If, however, each party's binding duty of performance amounts to a valuable consideration the courts do not insist that the bargain be precisely as favorable to one side as to the other." Lindner v. Mid-Continent Petroleum Corp., supra, 252 S.W.2d at p. 632.

We think the holding in Howard v. Mercury Record Corporation, 5 Cir., 178 F.2d 449, relied on by the appellant, is inapposite, because there the court was dealing with an executory contract. The evidence showed a contract of indefinite duration and one lacking in mutuality of obligation. The court held that, because the contract was executory, it was revocable and that the complainant was barred from recovering any loss or damage sought to be predicated upon the contract to the extent it was executory, but the court permitted recovery of damages sustained from breaches of the agreement to the extent that the contract had become executed. To the same effect as Howard, supra, see Sherill v. Alabama Appliance Co., 240 Ala. 46, 197 So. 1.

In brief the appellant argues that an agreement which places all of the obligations on one party, with no obligations on the other, is so gross that it shocks the conscience, and courts of equity will interfere on the ground that such inadequacy of consideration amounts to conclusive evidence of fraud, and will cancel the contract. He states in effect that the greater and more numerous obligations are imposed on him under the lease, with the appellee obligated to pay nothing and to do absolutely nothing under the agreement, and this entitled him to terminate the lease.

■ It is difficult for us to understand why and how the appellant continued to comply with the agreement at all times from May 13, 1966 to April 15, 1972, as he states, but now finds it so faulty as to be unenforceable against him. First from a reading of the instruments constituting the entire agreement we do not consider it in anywise ambiguous, as the appellant argues; but, were this so, that construction which the parties have placed on the agreement and which they themselves have practiced in and about its performance, will ordinarily be accepted by the courts as a correct one. Conway v. Andrews, 286 Ala. 28, 236 So.2d 687; Hill v. Davis, 272 Ala. 166, 130 So.2d 39, and cases there cited.

■ Further, referring to the entire agreement, it appears to be one for an initial term of stated duration, with valuable considerations passing between the parties, and with promises made by each party that are enforceable obligations between them. There is a binding duty of performance by the parties, in our opinion, even though the promises of the appellant are not exactly coextensive with those of the appellee. Lindner v. Mid-Continent Petroleum Corp., supra. The fact that the appellee reserved the option to cancel the prime lease upon giving sixty days notice, with a like option not given to the appellant, we have concluded, does not deprive the agreement of mutuality. It is noted that the prime lease expressly provides as follows: "9. The payments made and to be made hereunder by lessee to lessor shall be considered sufficient consideration for all options herein granted by lessor to lessee."

■■ The rule is too well settled, even to admit of argument, that consideration in fact bargained for is not required to be adequate in the sense of equality in value. Corbin on Contracts, § 127. The mere inadequacy, alone, is never sufficient to vitiate a contract or conveyance otherwise valid, and the courts are not disposed to enter upon nice calculations to strike a balance on the one side or the other. Norrell v. Thompson, 252 Ala. 603, 42 So.2d 461, 462. Absolute equality is not to be hoped for, and is seldom attained in men's dealings one with the other. Nor is consideration to be measured in terms of dollars and cents alone; convenience, avoidance of troublesome details and efforts are proper elements. Decker v. Decker, 253 Ala. 345, 44 So.2d 435.

■ The offsetting of one party's rent against the other's as a matter of convenience did not detract from the fact that a valuable consideration passed between them for the execution of their respective leases which, though similar in some respects, were different in other respects.

■ Appellant would have us construe the leases against appellee merely because they were drafted by appellee and admittedly are favorable to him. However we do not think there is cause for such construction. Under Greenwood v. Bennett, 208 Ala. 680, 95 So. 159, the rule is that the lease is to be construed more strongly against the lessor only in cases of ambiguity and uncertainty. In cases where the language is unambiguous and certain, the lease is to be construed accordingly to the parties' intention as gathered from the whole instrument.

And in National Refining Co. v. Cox, supra, 57 S.W.2d at p. 782, it was stated:

"Defendant insists that owing to the fact that plaintiff drew the lease it should be construed in its most unfavorable light to it. But this rule of construction comes into play only where there is ambiguity in the writing and the fact that it is necessary to imply matters in a contract or lease in order to uphold its validity does not give rise to an ambiguity. Walker v. Tucker, supra [70 Ill. 527]. * * *"

We find here presented no such ambiguity in the instruments as to give a field of operation to this rule of construction.

■ In addition appellant argues that the agreement was nothing more than an attempt by the appellee to maintain an exclusive dealership with appellant on appellant's real estate for the appellee's products. Our answer to this is that the appellant must have considered the advantages and disadvantages of this arrangement when he entered into the agreement, because its provisions are clear and unambiguous. Evidently the exclusive dealership was then considered more advantageous by the appellant than now, and was what he wanted, because he admittedly complied with the agreement for nearly six years. But irrespective of that consideration, we

find nothing wrong with a business transaction which establishes an exclusive dealership between two parties where the parties deal at arm's length under an otherwise legal engagement. The factor of exclusive dealership may well have mutual advantages for both parties, and, again, it may be or become more advantageous to one of the parties than the other as time goes on. Even so, it is certainly not unlawful, nor in restraint of trade in an unlawful sense, for one man to agree to purchase all of his gasoline and oil products from another man. In Terre Haute Brewing Co. v. McGeever, 198 Ala. 474, 480, 73 So. 889, 891, this court said:

" * * * Contracts in general restraint of trade violate the policy of the law, and are therefore void. Every contract, however, which at all restrains or restricts trade, is not void; it must injuriously affect the public weal; that it may affect a few or several individuals engaged in a like business does not render it void. Every contract of purchase and sale to some extent injures other parties; that is, it necessarily prevents others from making the sale or sales consummated by such contract. This is clearly true of every contract to purchase in the future, or to sell goods to be made in the future, or to purchase the entire output of a mine or all the grain or cotton produced by one or several parties during a season or seasons; but no one ever contended that such were void, unless affecting persons or territory sufficient to constitute it a monopoly, pool, or trust of the article in question."

We have reviewed this case carefully, and after so doing we are of the opinion that the trial judge did not err in his findings and the final decree entered thereon. For the reasons stated in this opinion the final decree of the trial court is due to be affirmed.

Affirmed.

All Justices concur.