This is an appeal by Barbara Grimes from summary judgments in favor of defendants Jack Balsli and Liberty National Life Insurance Company ("Liberty National"), and from a dismissal of the complaint against defendant Robert E. Henderson.
On March 1, 1983, plaintiff's husband, Roy D. Grimes, purchased a $15,000.00 life insurance policy from agent Balsli of Liberty National, which named the appellant as the sole beneficiary. On August 30, 1983, Mr. and Mrs. Grimes were notified by Liberty National that the policy had been cancelled because of non-payment of premiums. Grimes contends that four consecutive payments of $60.23 had been remitted at the time she and her husband received the cancellation notice and that she contacted Balsli for an explanation of the cancellation. Grimes claims that Balsli admitted that he had failed to remit the policy premiums to Liberty National, offered to refund the premiums, and then agreed to have the policy reinstated when appellant refused his offer of a refund.
Grimes alleges that, in conversations with Robert Henderson, manager of Liberty National's Mobile Central District Office, she was assured that the insurance policy covering Mr. Grimes was effective and that she had no cause for worry. Following her husband's death, December 16, 1984, appellant claims that she was told by Henderson that the policy on Mr. Grimes's life was not in effect and that she could not expect payment from Liberty National. Grimes's demand on Henderson and Liberty National to honor the policy was unsuccessful. She then wrote to the attorney retained by Balsli and asked for a payment of $120.46 from Liberty National as a refund of premiums paid and $200.00 from Balsli. Grimes received and negotiated checks in the amounts she requested and, on May 24, 1985, she executed the following release:
 For and in consideration of $200.00, I discharge Jack R. Balsli from any and all claims pertaining to the cancellation of our policy with the Liberty National Life Insurance Company.
Henderson argues that he notified the Grimeses in February 1984 that the policy on Mr. Grimes's life had lapsed and that the Grimeses refused his offer to reinstate it. Balsli alleges that the only relevant facts are those pertaining to the signing of the release and that he neither agrees nor disagrees with the facts as stated by Grimes.
Grimes filed suit against Balsli, Henderson, and Liberty National on July 23, 1985, alleging breach of contract, negligence, bad faith failure to pay a claim, outrage, fraud, and deceit. Following argument on defendants' motions to dismiss, Grimes was ordered to amend her complaint. On April 15, 1986, Henderson and Liberty National filed motions to dismiss Grimes's amended complaint and Balsli filed a motion for summary judgment. Grimes filed an affidavit in opposition to the motions, which were argued before Judge Telfair Mashburn on August 1, 1986.
The court held that Grimes could not maintain joint actions for fraud, misrepresentation, and deceit against both Liberty National and Henderson, and dismissed the complaint as it pertained to Henderson. Summary judgment was granted in favor of Balsli on the grounds that Grimes had released him. The court then concluded that because neither agent Balsli nor agent Henderson remained as parties to the suit, Grimes could not proceed against the principal, and entered summary judgment on behalf of Liberty National. Grimes filed this appeal on September 3, 1986.
Grimes argues that she "was under extreme emotional and physical duress due to the recent death of her husband" at the time she executed the release. She also contends that the release was ambiguous, unconscionable, and lacked sufficient consideration. We disagree.
The written release was executed by appellant on May 24, 1985, more than five months after Mr. Grimes's death. Although Grimes may have been under great stress at the time she signed the release, there is no evidence to indicate that Balsli or his attorney subjected her to improper *Page 967 
pressure or coerced her cooperation in an effort to secure a release. See Head v. Gadsden Civil Service Board,389 So.2d 516 (Ala.Civ.App. 1980). There is no evidence from which we could conclude that duress was a factor in Grimes's release of Balsli.
In Miles v. Barrett, 223 Ala. 293, 134 So. 661
(1931), this Court held the following language in a release to be unambiguous:
 "in full and complete settlement of any and all claims . . . on account of such injuries. . . ."
223 Ala. at 293, 134 So. at 661. In Finley v. LibertyMutual Insurance Co., 456 So.2d 1065 (Ala. 1984), we held that language that released the defendants from "any and all claims arising out of or in any way connected with the above-described accident" was not ambiguous. Similarly, the release of agent Balsli from "any and all claims pertaining to the cancellation of our policy" cannot be said to be ambiguous.
Grimes contends that the release of agent Balsli was not supported by sufficient consideration. This argument lacks merit. As we noted in Marcrum v. Embry, 291 Ala. 400, 282 So.2d 49 (1973):
 The rule is too well settled, even to admit of argument, that consideration in fact bargained for is not required to be adequate in the sense of equality in value. Corbin on Contracts, § 127. The mere inadequacy, alone, is never sufficient to vitiate a contract or conveyance otherwise valid, and the courts are not disposed to enter upon nice calculations to strike a balance on the one side or the other. Norrell v. Thompson, 252 Ala. 603, 42 So.2d 461, 462. Absolute equality is not to be hoped for, and is seldom attained in men's dealings one with the other. Nor is consideration to be measured in terms of dollars and cents alone; convenience, avoidance of troublesome details and efforts are proper elements. Decker v. Decker, 253 Ala. 345, 44 So.2d 435.
291 Ala. at 406, 282 So.2d at 54; as quoted in Finley,supra, at 1068. We have also held that Ala. Code (1975), § 12-21-109, is to be construed in pari materia
with § 8-1-23. Section 8-1-23 provides:
 An obligation is extinguished by a release therefrom given to the debtor by the creditor upon a new consideration or in writing with or without new consideration. [Emphasis added.]
See National Life Accident Ins. Co. v. Karasek,240 Ala. 660, 200 So. 873 (1941); Homewood Dairy ProductsCo. v. Robinson, 254 Ala. 197, 48 So.2d 28 (1950);Mitchell v. Cobb, 270 Ala. 346, 118 So.2d 918
(1960).
Appellant's contention that the release is "unconscionable on its face" because Balsli was released "for fraud involving a $15,000.00 life insurance policy in return for a token payment of $200.00" ignores statute and case law regarding consideration and a written release. Grimes demanded and received $200.00 from Balsli and $120.46 from Liberty National. We find no grounds for appellant's argument that the release is unconscionable.
Henderson and Liberty National argue that the release of Balsli also released them, and, therefore, that summary judgment was proper. We disagree. Even though the release effectively removed Balsli from "any and all claims pertaining to the cancellation" of Mr. Grimes's life insurance policy, the release neither named Henderson or Liberty National nor included any reference to the release of any other parties. Contrary to appellant's contention,Baker v. Ball, 473 So.2d 1031 (Ala. 1985), is distinguishable from the present case. In Baker, the release at issue specifically released the named partiesand "any and all other persons, firms, corporations and parties whatever, jointly and severally, of and from any and all judgments, claims, demands, actions, causes of action, suits, costs, damages, expenses, compensation and liabilities of every kind." Id. at 1034. No such language is included in the release executed by Grimes; it refers only to Balsli.
In American Pioneer Life Ins. Co. v. Sandlin,470 So.2d 657 (Ala. 1985), Justice Almon cited § 12-21-109, to-wit: *Page 968 
 All receipts, releases and discharges in writing . . . must have effect according to their terms and the intentions of the parties thereto.
He noted also that this Court has previously recognized circumstances in which a release, prior settlement, judgment against or satisfaction of judgment by one joint tortfeasor has or has not released another joint tortfeasor.Steenhuis v. Holland, 217 Ala. 105, 115 So. 2
(1927). In Steenhuis, this Court held:
 "[I]t is the right of the injured party to accept satisfaction in part from one tortfeasor, release him, and proceed against the other. Such release operates in favor of such other only as satisfaction pro tanto.
". . . .
 "The law favors and encourages compromise. When the release shows it was in compromise of the liability of the party to whom given, with no reference to a full satisfaction as against others, we can see no just presumption that they had in mind a release of others in whom the released party had no interest. . . .
". . . .
 "In the case of Wright v. McCord, [205 Ala. 122, 88 So. 150 (1920)], there was an express reservation of right to pursue another tort-feasor. This stipulation was given effect. But such reservation is not essential, nor need the release take the form of a covenant not to sue. The true inquiry is, did the parties intend to limit the release to the parties named, with no intent that the cause of action be satisfied in full?"
Id., 217 Ala. at 107-08, 115 So. at 3-4 (citations omitted), as cited in 470 So.2d at 661.
Because, as both appellant and appellees concede, the trial court erroneously considered Grimes's affidavit in ruling on Henderson's motion to dismiss, the motion, in effect, became a motion for summary judgment and must be reviewed according to the scintilla of evidence standard. That standard of review provides that summary judgment is not appropriate if there exists a scintilla of evidence in support of the position of the nonmoving party. In this instance, Liberty National and Henderson had the burden of showing that no genuine issue of material fact existed. Having concluded, however, that the release of Balsli did not release either Henderson or Liberty National, we hold that summary judgment should not have been granted for either of them on that basis.
Henderson argues further that even if the release were found to be inapplicable to him, and, assuming arguendo, that the life insurance contract on Mr. Grimes had been in effect at the time of his death, he (Henderson) was not liable because he acted only as the agent of a disclosed principal. Again, we disagree.
In Dillon v. AFBIC Development Corp., 597 F.2d 556
(5th Cir. 1979), the court quoted Restatement (Second) ofAgency (1958) for the general rule:
 "an agent who does an act otherwise a tort is not relieved from liability by the fact that he acted at the command of the principal or on account of the principal." Id. at 433. Furthermore, an agent who assists his principal in committing a tort is himself liable as a joint tortfeasor. Id. Comment d.
Dillon, supra, at 562. In the present case, appellant amended her complaint and alleged breach of contract, fraud, and deceit. The extent of Henderson's liability, if any, and that of Liberty National are questions for the trier of fact.
The release executed by Grimes released agent Balsli from "any and all claims pertaining to the cancellation of our policy." We must conclude, therefore, that the trial court did not err in granting Balsli's motion for summary judgment. The release was not effective as to Henderson and Liberty National; therefore, we hold that the court erred in dismissing Henderson and in granting summary judgment in favor of Liberty National. Grimes is entitled to present her case against them to a jury.
The judgment of the Circuit Court of Mobile County is, therefore, affirmed in part and reversed in part, and the cause is remanded for a trial on the merits. *Page 969 
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
JONES, ALMON, BEATTY and STEAGALL, JJ., concur.