# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

315 Corley CW LLC; 368 Mount Pelia LLC; Bridge Charleston Investments B LLC; Bridge Charleston Investments C LLC; Bridge Charleston Investments E LLC; Bridge Charleston Investments H LLC; Anne Bosler and Dylan Hart as Trustees of the Bosler-Hart Trust; Geoffrey J. Block; R. Jeffrey Kimball and Deborah S. Kimball; Sebrina Leigh-Jones and Chris Leigh-Jones; Jennifer Albero; Live Oak Assets LLC; Matthew N. Lynch and Barbara A. Lynch; MKM 22 West LLC; One Rumford Lane LLC; Salt Works LLC; and TTJR LLC; individually, derivatively, and as class representatives, as set forth herein, Respondents/Appellants,

v.

Palmetto Bluff Development, LLC; Palmetto Bluff Club, LLC; Palmetto Bluff Real Estate Company, LLC; PBLH, LLC; Montage Palmetto Bluff, LLC; Palmetto Bluff Preservation Trust, Inc.; Palmetto Bluff Preservation Trust Board of Stewards: Jordan Phillips; Mark Polites; Gray Ferguson; Henry Armistead; South Street Partners, LLC; John Does 1-25, Appellants/Respondents.

Appellate Case No. 2022-001587

———————

Appeal From Beaufort County
R. Ferrell Cothran, Jr., Circuit Court Judge

———————

Opinion No. 6074
Heard June 4, 2024 – Filed July 24, 2024
Withdrawn, Substituted, and Refiled November 13, 2024

_____

**AFFIRMED**
_____

Val S. Stieglitz, III, of Columbia, Robert Bruce Wallace, of Charleston, Kirsten Elena Small, of Greenville, and Alexandra Harrington Austin, of Charleston, all of Maynard Nexsen PC; and Donald Falk, admitted pro hac vice, of Schaerr Jaffe, LLP, of San Francisco, California, all for Appellants/Respondents.

Ian S. Ford, Ainsley Fisher Tillman, and Hunter H. James, all of Ford Wallace Thomson LLC, of Charleston, for Respondents/Appellants.
_____

**GEATHERS, J.:**  In these cross-appeals, Appellants/Respondents Developers (the Defendants) appeal the circuit court's order refusing to compel arbitration in a dispute arising from several contracts underlying the Defendants' sale of real estate in the Palmetto Bluff Development to Respondents/Appellants Homeowners (the Plaintiffs).  The Plaintiffs cross-appeal the circuit court's order denying summary judgment for their declaratory judgment action.  We affirm the circuit court's order denying the Defendants' motion to compel arbitration and dismiss the Plaintiffs' cross-appeal.

## FACTS

The Palmetto Bluff Development (Palmetto Bluff) is a planned residential community located in Beaufort.  Purchasers of real estate in Palmetto Bluff are required to join the Palmetto Bluff Club (the Club) as a condition of purchasing property in the development; membership in the Club is purportedly automatic upon acceptance of a deed.  Club membership is then further memorialized by the execution of a Club Membership Agreement, and the governing terms of the Club are set forth in the Club Membership Plan (collectively, the Club Documents).  The Club is for-profit, is managed by the Defendants, and retains the power, according to the parties, to unilaterally change its fees and policies with no input from the Club's members.

The Club Membership Agreement includes the following arbitration clause:

[A]ny and all controversies, disputes[,] or claims relating directly or indirectly to, or arising directly or indirectly from[,] this Membership Agreement, including, but not limited to, the breach or alleged breach of this Membership Agreement, shall be resolved by mandatory arbitration in accordance with the [rules of the American Arbitration Association (AAA) then in effect], applying the substantive laws of South Carolina.

This provision was added on June 19, 2017, and the Club Membership Plan acknowledges that the provision consequently applies only to those who became Club members on or after this date. The arbitration clause is mirrored in the Club Membership Plan and forms the foundation for this appeal.

In July 2020, several of the Plaintiffs complained to the Defendants about changes the Club was planning to make that the Plaintiffs understood would, in some capacity, limit the ability of their short-term tenants to access and use the Club's facilities. Later, in October 2021, following failed mediation attempts, a larger group that included more of the Plaintiffs in the present action sent a letter disagreeing with the Defendants' assertion that the Defendants possessed the ability to implement such restrictions. After further mediation attempts, the Plaintiffs commenced this suit on April 12, 2022, asserting sixteen causes of action. Two days later, the Plaintiffs sent a demand for arbitration to the AAA that included their complaint.

On May 10, 2022, the Plaintiffs asked the circuit court to stay arbitration and sought summary judgment on the alleged invalidity of the arbitration clause. On May 16, 2022, the Defendants answered the demand and filed a counterdemand with the AAA. The Defendants then asked the court to dismiss the action pursuant to Rule 12(b)(8), SCRCP, or, alternatively, to compel arbitration and stay the action.

Following several hearings, the circuit court issued an order on September 15, 2022, (1) granting the Plaintiffs' motion to stay arbitration, (2) denying the Defendants' motion to compel arbitration—in part because the arbitration agreement was unconscionable—and (3) denying, without prejudice, the Plaintiffs' motion for partial summary judgment. These appeals followed.

**THE DEFENDANTS' ISSUES ON APPEAL**

1. Did the circuit court err in ruling on the arbitrability of the claims rather than reserving this determination for an arbitrator?

2. Did the circuit court err in determining that an agreement to arbitrate does not exist between many of the parties?

3. Did the circuit court err in finding that any agreements to arbitrate that do exist are invalid, unlawful, and unconscionable?

4. Did the circuit court err in determining that the South Carolina Uniform Arbitration Act applies?

### THE PLAINTIFFS' ISSUE ON APPEAL

1. Did the circuit court err in refusing to grant partial summary judgment to the Plaintiffs on their declaratory judgment claim?

### STANDARD OF REVIEW

"Appeal from the denial of a motion to compel arbitration is subject to de novo review." *Chassereau v. Global-Sun Pools, Inc.*, 363 S.C. 628, 631, 611 S.E.2d 305, 307 (Ct. App. 2005), *aff'd as modified on other grounds*, 373 S.C. 168, 644 S.E.2d 718 (2007). Nonetheless, "a circuit court's factual findings will not be reversed on appeal if any evidence reasonably supports those findings." *Wilson v. Willis*, 426 S.C. 326, 335, 827 S.E.2d 167, 172 (2019); *see also Liberty Builders, Inc. v. Horton*, 336 S.C. 658, 664, 521 S.E.2d 749, 753 (Ct. App. 1999) ("[South Carolina] now join[s] the majority of jurisdictions granting deference to a circuit [court]'s factual findings made when deciding a motion to stay an action pending arbitration.").

### LAW/ANALYSIS

### I.     THE DEFENDANTS' APPEAL

The Defendants appeal the circuit court's refusal to compel arbitration and argue that the arbitration agreement contained in the Club Documents requires all of the claims in this case to be arbitrated. We hold that (1) the circuit court was the proper adjudicator to determine whether a valid agreement to arbitrate existed and (2) the arbitration clause contained in the Club Documents is unconscionable and unenforceable.

## A. Federal Arbitration Act or the South Carolina Uniform Arbitration Act

As a threshold matter, the Defendants contend that the Federal Arbitration Act (FAA)[1] governs this dispute rather than the South Carolina Uniform Arbitration Act (SCUAA).[2] "Parties are free to enter into a contract providing for arbitration under rules established by state law rather than rules established by the FAA." *Zabinski v. Bright Acres Assocs.*, 346 S.C. 580, 592, 553 S.E.2d 110, 116 (2001). "[T]he dispositive question is whether the parties intended to be bound by federal or state arbitration law." *Osteen v. T.E. Cuttino Const. Co.*, 315 S.C. 422, 426, 434 S.E.2d 281, 283 (1993). Here, there is no ambiguity regarding whether the parties intended to be bound by federal or state arbitration law. The Membership Agreement contains more than a generic choice of law provision. The front page of the Membership Agreement states, underlined and in all capital letters, that "This membership agreement is subject to arbitration pursuant to South Carolina Code Section 15-48-10, et. seq." Because the Membership Agreement explicitly requires application of South Carolina arbitration law, we need not address any requirements for FAA coverage; instead, we hold that the SCUAA applies. *See Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989).

## B. Gateway Questions

The parties disagree as to the question of who should resolve their claims—an arbitrator or a court. The Defendants argue that parties can agree to give the determination of an arbitration agreement's validity to an arbitrator and that the incorporation of the AAA rules in the arbitration agreement here did exactly that. We hold that the question of the arbitration agreement's validity was properly before the circuit court because our supreme court held that, under the SCUAA, courts must determine the enforceability of arbitration agreements challenged as unconscionable. *Simpson v. MSA of Myrtle Beach, Inc.*, 373 S.C. 14, 23–24, 644 S.E.2d 663, 668 (2007).

It is true that parties can delegate questions of arbitrability—such as the question of whether an arbitration agreement is valid—to an arbitrator. *See Aiken v. World Fin. Corp. of South Carolina*, 367 S.C. 176, 179, 623 S.E.2d 873, 874 (Ct.

---

[1] 14 U.S.C. §§ 1–16.

[2] S.C. Code Ann. § 15-48-10 to -240 (2005).

App. 2005) ("The question whether a claim is subject to arbitration is a matter [for] judicial determination, unless the parties have provided otherwise." (quoting *Chassereau*, 363 S.C. at 631, 611 S.E.2d at 307)); *see also Carson v. Giant Foods, Inc.*, 175 F.3d 325, 329 (4th Cir. 1999) ("[T]he parties can agree to let an arbitrator determine the scope of his own jurisdiction."); *Coinbase, Inc. v. Suski*, 602 U.S. 143, 152 (2024) (Gorsuch, J., concurring) ("[P]arties can agree to send arbitrability questions to an arbitrator . . . .").

Further, Rule 7(a) of the AAA's Commercial Arbitration Rules—which, again, the parties incorporated into their agreement here—purports to do exactly that: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court." AAA, *R-7. Jurisdiction*, Commercial Arbitration Rules and Mediation Procedures, 14 (2022) www.adr.org/sites/default/files/Commercial-Rules_Web.pdf.

However, in South Carolina, if an arbitration provision is challenged on grounds of unconscionability, the question of the clause's validity is for courts to decide, even if the clause delegates issues of validity by incorporating the AAA's Commercial Arbitration Rules. *Simpson*, 373 S.C. at 23–24, 644 S.E.2d at 668. In *Simpson*, the arbitration agreement stated that, in addition to certain disputes between the dealer (or its agents) and the customer, any dispute relating to "the validity and scope of this contract[] shall be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association." *Id.* at 20, 644 S.E.2d at 666. But the court held that under S.C. Code Ann. § 15–48–20(a), "the trial court was the proper forum for determining the enforceability of the arbitration clause" because Plaintiffs "challenged the validity of the arbitration provision on grounds of unconscionability, bringing into question whether an arbitration agreement even existed in the first place."[3]  *Id.* at 23, 644

---

[3] We acknowledge that in *Rent-A-Center, West, Inc., v. Jackson*, the United States Supreme Court held that under the FAA, where an arbitration agreement delegates the question of its enforceability to arbitrators, a court may decide the question if a party specifically challenges the delegation clause as unconscionable, but an arbitrator must decide the question if a party merely challenges the arbitration agreement as a whole as unconscionable. 561 U.S. 63, 71–72 (2010); *see also Doe v. TCSC, LLC*, 430 S.C. 602, 608, 846 S.E.2d 874, 877 (Ct. App. 2020).  Pursuant to S.C. Const. art. V, § 9, this Court is bound by *Simpson*, which states that, under the SCUAA, specifically, section 15-48-20(a), the question of enforceability is for

S.E.2d at 668. The matter was therefore properly before the circuit court rather than an arbitrator.

## C. Unconscionability

The circuit court concluded that the arbitration agreement in the Club Documents was unenforceable because it is unconscionable. We agree because the Plaintiffs lacked a meaningful choice in entering the agreement and the agreement—which can be unilaterally modified by the Defendants—improperly limits statutorily-mandated damages.

An arbitration agreement is unconscionable if there is (1) an absence of meaningful choice in entering the agreement and (2) oppressive and one-sided terms. *See Smith v. D.R. Horton, Inc.*, 417 S.C. 42, 49, 790 S.E.2d 1, 4 (2016).

### 1. Absence of Meaningful Choice

"Whether one party lacks a meaningful choice in entering the arbitration agreement at issue typically speaks to the fundamental fairness of the bargaining process." *Id.* To this end, courts consider, among other things, "the relative disparity in the parties' bargaining power, the parties' relative sophistication, whether the parties were represented by independent counsel, and whether 'the plaintiff is a substantial business concern.'" *Id.* (quoting *Simpson*, 373 S.C. at 25, 644 S.E.2d at

the court to decide when an arbitration agreement is challenged as unconscionable. 373 S.C. at 23–24, 644 S.E.2d at 668. We query whether, if the supreme court relied on the SCUAA to reach its result in *Simpson*, the FAA would have preempted section 15-48-20(a) to the extent it invalidated the delegation clause, which is essentially "an additional, antecedent agreement" to arbitrate the validity of the arbitration agreement as a whole. *Rent-A-Center,* 561 U.S. at 70; *see e.g., Zabinski*, 346 S.C. at 592, 553 S.E.2d at 116 ("While the parties may agree to enforce arbitration agreements under state rules rather than FAA rules, the FAA will preempt any state law that completely invalidates the parties' agreement to arbitrate."). But in *Simpson*, the supreme court disposed of this issue, stating "FAA pre-emption of the UAA is not an issue in this case because the state laws applicable to this case do not operate to completely invalidate the parties' agreement to arbitrate." *Simpson*, 373 S.C. 14, 22 n.1, 644 S.E.2d 667 n.1. As the state law issues in this case are the same as those in *Simpson*—the SCUAA and general contract principles governing unconscionability—we must follow *Simpson* in holding that the SCUAA is not preempted.

669).    Contracts of adhesion are "standard form contract[s] offered on a 'take-it-or-leave-it' basis with terms that are not negotiable."  *Simpson*, 373 S.C. at 26–27, 644 S.E.2d at 669 (quoting *Munoz v. Green Tree Fin. Corp.*, 343 S.C. 531, 541, 542 S.E.2d 360, 365 (2001)).  However, "[a]dhesion contracts . . . are not per se unconscionable."  *Id.* at 27, 644 S.E.2d at 669.  Instead, "*adhesive contracts are not unconscionable in and of themselves* ***so long as the terms are even-handed***." *Damico v. Lennar Carolinas, LLC*, 437 S.C. 596, 614, 879 S.E.2d 746, 756 (2022). In *Simpson*, our supreme court further stated that "[t]he general rule is that courts will not enforce a contract [that] is violative of public policy, statutory law, or provisions of the Constitution."  373 S.C. at 29–30, 644 S.E.2d at 671.

> In determining whether a contract was "tainted by an absence of meaningful choice," courts should take into account the nature of the injuries suffered by the plaintiff; whether the plaintiff is a substantial business concern; the relative disparity in the parties' bargaining power; the parties' relative sophistication; whether there is an element of surprise in the inclusion of the challenged clause; and the conspicuousness of the clause.

*Id.* at 25, 644 S.E.2d at 669 (citation omitted) (quoting *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 295 (4th Cir. 1989)).  Our supreme court has "taken judicial cognizance of the fact that a modern buyer of new residential housing is normally in an unequal bargaining position as against the seller."  *Smith*, 417 S.C. at 50, 790 S.E.2d at 4 (quoting *Kennedy v. Columbia Lumber & Mfg. Co.*, 299 S.C. 335, 343, 384 S.E.2d 730, 735–36 (1989)).    Here, the Defendants' reliance on the sophistication of the Plaintiffs as wealthy purchasers of secondary homes is misplaced in light of our supreme court's analysis in *Damico*:

> [T]he sophistication of Petitioners, as individual homebuyers, pales in comparison to Lennar[, a real estate developer].  Given that Lennar has sold thousands of homes in the Carolinas, whereas Petitioners will likely only purchase, at best, a handful of homes in their entire lifetime, we find it fair to characterize Lennar as significantly more sophisticated than Petitioners in home buying transactions.

437 S.C. at 614–15, 879 S.E.2d at 756.  The contract here is one of adhesion. Agreement to the terms of the Club Documents is automatic and mandatory when

purchasing a home in Palmetto Bluff. As the circuit court aptly put it, "there is no conceivable potential for bargaining power on the part of those whom the provisions purport to bind." We hold that agreement to the arbitration clause in this case is characterized by an absence of meaningful choice on the Plaintiffs' part.

### 2. Oppressive and One-Sided Terms

Turning to the second prong of unconscionability, terms are unconscionably oppressive and one-sided when they are such that "no reasonable person would make them and no fair and honest person would accept them." *Id.* at 612, 879 S.E.2d at 755. The Club Documents in this case provide, "[The Defendants] reserve[] the right in [their] sole and absolute discretion, from time to time, to modify the Membership Plan and Rules and Regulations . . . and to make any other changes to the Membership Documents . . . ." We are not satisfied with the Defendants' contention that the circuit court was forbidden from considering this provision because it is in the container contract rather than the arbitration clause itself. *Cf. Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540, 543–44 (4th Cir. 2005) (applying Maryland law and refusing to invalidate an arbitration agreement for lack of consideration when language permitting one party to unilaterally amend the contract was not contained within the arbitration clause); *id.* at 544 ("[T]he district court simply was not at liberty to go beyond the language of the [a]rbitration [a]greement in determining whether the agreement contained an illusory promise."). Here, although the language permitting unilateral modification to the contract is located outside the arbitration clause itself, it is not located in a separate policy. Furthermore, it specifically states that the documents in which the arbitration agreement is located are subject in their entirety to the Defendants' unilateral ability to make changes. Therefore, it is part of the arbitration agreement. *See New Hope Missionary Baptist Church v. Paragon Builders*, 379 S.C. 620, 630, 667 S.E.2d 1, 6 (Ct. App. 2008) ("Even if the overall contract is unenforceable, the arbitration provision is not unenforceable unless the reason the overall contract is unenforceable *specifically relates to the arbitration provision*." (emphasis added) (quoting *Hous. Auth. of City of Columbia v. Cornerstone Hous., LLC*, 356 S.C. 328, 340, 588 S.E.2d 617, 623 (Ct. App. 2003))); *see also Hicks v. Brookdale Senior Living Cmtys, Inc.*, No. 617-cv-2462-DCC-KFM, 2018 WL 4560591, at *4 (D.S.C. Mar. 13, 2018) (noting that in other cases before the United States District Court for the District of South Carolina, arbitration agreements were upheld when reservations of the power to unilaterally modify a contract were "contained in a *separate policy* and [were] not *directed specifically to the arbitration agreement*" (emphases added)); *cf. Coady v. Nationwide Motor Sales Corp.*, 32 F.4th 288, 292–93 (4th Cir. 2022) (concluding that, under Maryland Law, an acknowledgment receipt containing a clause

permitting unilateral modification of the contract was part of the arbitration agreement because the agreement's language incorporated the receipt and the receipt served as the signature page for the agreement); *see generally Marcrum v. Embry*, 282 So.2d 49, 52 (Ala. 1973) ("It is quite true that where one party reserves an absolute right to cancel or terminate a contract at any time, mutuality is absent."). As the circuit court recognized, this unilateral ability to modify any part of the contract—including as to the terms of existing contracts—speaks to the one-sidedness of the arbitration agreement.

Furthermore, the arbitration clause provides, "No consequential, lost profits, diminution in value, lost opportunity, intangible, emotional, trebled, enhanced[,] or punitive damages may be awarded in said arbitration." In *Simpson*, our supreme court struck down an arbitration agreement that prohibited the "award [of] punitive, exemplary, double, or treble damages (or any other damages [that] are punitive in nature or effect)" because the South Carolina Unfair Trade Practices Act (SCUTPA) "requires a court to award treble damages for violations of the statute."[4] 373 S.C. at 28–29, 644 S.E.2d at 670; *see also* S.C. Code Ann. § 39-5-140(a) (2023) (stating that on finding that a violation of the SCUTPA was "willful or knowing[,] . . . [a] court shall award three times the actual damages sustained."). Like in *Simpson*, the arbitration agreement in the Club Documents would deprive the Plaintiffs of their statutory right to treble damages for the SCUTPA claim that they bring. *See also York v. Dodgeland of Columbia, Inc.*, 406 S.C. 67, 88, 749 S.E.2d 139, 150 (Ct. App. 2013) (holding that an arbitration provision identical to the one in *Simpson* precluding treble damages was unconscionable).

The Defendants' reliance on *Rowe v. AT&T, Inc.*, a federal District Court case, is misplaced. No. 6:13–cv–01206–GRA, 2014 WL 172510 (D.S.C. Jan. 15, 2014). Citing to the U.S. Supreme Court in *PacifiCare Health System, Inc. v. Book*, the *Rowe* court wrote, "[I]n cases where it is uncertain how the arbitrator will construe remedial limitations, 'the proper course is to compel arbitration.'" *Id.* at *11 (quoting *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 407 (2003)). In *PacifiCare*, the Supreme Court refused to invalidate an arbitration clause that potentially restricted the right to treble damages under the federal Racketeer Influenced and Corrupt

---

[4] The court also noted this clause improperly limited the mandatory award of double damages for violations of the South Carolina Regulation of Manufacturers, Distributors, and Dealers Act. 373 S.C. at 28–30, 644 S.E.2d at 670–71; *see also* S.C. Code Ann. § 56-15-110 (2018) (providing a person injured by a violation of the statute "shall recover double the actual damages by him sustained").

Organizations (RICO) Act. 538 U.S. at 407. The arbitration agreement in *PacifiCare* provided that (1) "punitive damages shall not be awarded [in arbitration]," (2) "[t]he arbitrators . . . shall have no authority to award any punitive or exemplary damages," and (3) "[t]he arbitrators . . . shall have no authority to award extra contractual damages of any kind, including punitive or exemplary damages." *Id.* at 405 (alterations in original). The Supreme Court held the issue on appeal was unripe because it was speculative whether an arbitrator would construe treble damages as compensatory or punitive. *Id.* at 406–07.

Here, there is no such uncertainty. The contract in the instant case specifically prohibits the award of treble damages, regardless of whether they are construed as compensatory or punitive.[5]

In light of this limitation on damages and the Defendants' unilateral ability to modify the arbitration agreement, no reasonable person would make the present terms in this arbitration agreement, nor would any reasonable person accept them. Consequently, we hold that the arbitration agreement in the Club Documents is unconscionable.[6] As a result, we need not address the Defendants' remaining issues on appeal. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613,

---

[5] In a similar vein, the Defendants also cite a case from our supreme court, *Carolina Care Plan, Inc. v. United HealthCare Services, Inc.*, wherein the court enforced an arbitration agreement that prohibited the award of punitive damages even though the plaintiffs advanced the argument that the agreement improperly limited their right to treble damages under the SCUTPA. 361 S.C. 544, 557, 606 S.E.2d 752, 759 (2004). This case is not persuasive for the same reason we stated as to *PacifiCare* (to which *Carolina Care Plan* also cites): regardless of whether an arbitrator were to find that treble damages in the instant case are compensatory or punitive, the arbitration clause specifically purports to prohibit the award of treble damages *altogether*.

[6] We decline to analyze whether the unconscionable terms are severable because the parties did not include a severability clause in the arbitration agreement. *See Smith*, 417 S.C. at 50 n.6, 790 S.E.2d at 5 n.6 ("Because the arbitration agreement does not contain a severability clause, we find the parties did not intend for the Court to strike unconscionable provisions from the arbitration agreement. Thus, we decline to analyze whether the unconscionable provisions are severable, as doing so would be the result of the Court rewriting the parties' contract rather than enforcing their stated intentions.").

518 S.E.2d 591, 598 (1999) ("[An] appellate court need not address remaining issues when [resolution] of [a] prior issue is dispositive.").

## II.    THE PLAINTIFFS' APPEAL

We dismiss the Plaintiffs' appeal of the circuit court's denial of its motion for summary judgment because, in South Carolina, "it is well-settled that an order denying summary judgment is never reviewable on appeal." *Bank of N.Y. v. Sumter County*, 387 S.C. 147, 154, 691 S.E.2d 473, 477 (2010); *see also Ballenger v. Bowen*, 313 S.C. 476, 477, 443 S.E.2d 379, 380 (1994) ("A denial of a motion for summary judgment decides nothing about the merits of the case, but simply decides the case should proceed to trial."); *Holloman v. McAllister*, 289 S.C. 183, 185–86, 345 S.E.2d 728, 729 (1986) ("Appellate review of orders denying motions for summary judgment could lead to an absurd result: one who has sustained his position after a full trial and a more complete presentation of the evidence might nevertheless find himself losing on appeal because he failed to prove his case fully at the time of the motion.").

Although appellate courts have discretion to consider an order that is not immediately appealable if an immediately appealable issue is before the court and a ruling on appeal will avoid unnecessary litigation,[7] the supreme court did not intend for this exception to apply to orders denying summary judgment motions. *See Skywaves I Corp. v. Branch Banking and Trust Co.*, 423 S.C. 432, 460, 814 S.E.2d 643, 658 (Ct. App. 2018).

### CONCLUSION

For the foregoing reasons, we **AFFIRM** the circuit court's order denying the motion to compel arbitration. We also **DISMISS** the Plaintiffs' cross-appeal because the order denying summary judgment is not reviewable.

**HEWITT and VINSON, JJ., concur.**

---

[7] *See Pelfrey v. Bank of Greer*, 270 S.C. 691, 695, 244 S.E.2d 315, 317 (1978).