719 So.2d 201 (1998)
MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.; and Jerome T. Jordan
v.
Margaret KIRTON.
1970152.
Supreme Court of Alabama.
June 5, 1998.
A. Inge Selden III, Carl S. Burkhalter, and T. Louis Coppedge of Maynard, Cooper & Gale, P.C., Birmingham, for appellants.
Lange Clark, Birmingham; Archie C. Lamb, Jr., of Levin, Middlebrooks, Mabie, Thomas, Mitchell, Papantonio & Lamb, Birmingham, for appellee.
HOUSTON, Justice.
Merrill Lynch, Pierce, Fenner & Smith, Inc., and Jerome T. Jordan, a financial consultant for Merrill Lynch (hereinafter collectively referred to as "Merrill Lynch"), appeal from the trial court's order denying their motion to compel arbitration of Margaret Kirton's claims. We reverse and remand.
Paul Burgess Adamson, Sr. ("Paul Sr."), died in 1986, leaving a wife, Alice Eliot Adamson; a son, Paul Burgess Adamson, Jr. ("Paul Jr."); and a daughter, Margaret Adamson Kirton. Pursuant to Paul Sr.'s will, Paul Jr. was appointed executor of his father's estate and trustee of a testamentary trust ("the Family Trust"). Thereafter, Ms. Adamson executed a revocable trust indenture ("the revocable trust"), in which she named Paul Jr. as trustee. This trust was funded with individual assets of Ms. Adamson. Ms. Adamson was the income beneficiary *202 of the two trusts, and Paul Jr. and Ms. Kirton were the residual beneficiaries of the trusts. Both trust instruments gave Paul Jr. broad authority to execute documents on behalf of the trust beneficiaries.
In 1989, Paul Jr., exercising his authority as trustee for the two trusts, opened two Merrill Lynch "cash management accounts" and executed two cash management account agreements, which contained broadly worded arbitration clauses. Paul Jr. signed these agreements in his capacity as trustee.
In 1995, after having discovered that substantially all of the money was missing from the trust accounts, Ms. Adamson sued Paul Jr., alleging that he had made unauthorized use of the funds from the trusts for his own benefit. Ms. Adamson then obtained a restraining order requiring the immediate dissolution of the revocable trust and the disbursement of its corpus "jointly to [her] and [Ms. Kirton]."
Thereafter, Ms. Adamson and Ms. Kirton opened a Merrill Lynch joint account in their names and executed an "investor credit line service client agreement" ("the 1995 customer agreement"). Ms. Kirton's attorney was present when she executed the 1995 customer agreement. Paragraph 13 of the 1995 customer agreement contained a broadly worded arbitration provision, the pertinent parts of which are as follows:
"Arbitration is final and binding on the parties.
"The parties are waiving their right to seek remedies in court, including the right to jury trial.
"....
"The undersigned agrees, that all controversies which may arise between us, including but not limited to those involving any transaction or the construction, performance, or breach of this or any other agreement between us, whether entered into prior [to], on, or subsequent to the date hereof, shall be determined by arbitration."

(Emphasis added.) In the 1995 customer agreement, immediately above Ms. Kirton's signature, the following appeared:
"BY SIGNING THIS AGREEMENT, THE UNDERSIGNED ACKNOWLEDGES (1) THAT, IN ACCORDANCE WITH PARAGRAPH 13 [THE PERTINENT PORTIONS OF WHICH ARE SET OUT ABOVE], THE UNDERSIGNED IS AGREEING IN ADVANCE TO ARBITRATE ANY CONTROVERSIES THAT MAY ARISE WITH YOU...."
(Emphasis added.)
Ms. Adamson later amended the complaint in her action against Paul Jr., by adding Ms. Kirton as a plaintiff and adding Merrill Lynch, Pierce, Fenner & Smith, Inc., and Jerome T. Jordan as defendants. In the amended complaint, Ms. Adamson and Ms. Kirton alleged that Merrill Lynch owed them a fiduciary duty that it had breached, that it had converted a portion of the trusts' assets, and that it had fraudulently handled the trusts. Merrill Lynch filed a motion to compel arbitration and a motion for a stay pending arbitration. The trial court granted the motion to compel arbitration as to Ms. Adamson, but denied the motion to compel arbitration as to Ms. Kirton.[1] Merrill Lynch appealed, challenging the trial court's refusal to compel arbitration as to Ms. Kirton.
In denying Merrill Lynch's motion to arbitrate Ms. Kirton's claims against it, the trial court wrote:
"[Ms. Kirton] did not sign ... the 1989 agreement upon which [Merrill Lynch] ... relies in its motion for binding arbitration.... [T]here is no agreement between [Ms. Kirton] and [Merrill Lynch] to arbitrate any dispute under the 1989 agreement. That agreement was between [Paul Jr., the trustee] and Merrill Lynch and does not bind [Ms. Kirton].
"Pursuant to an earlier order in this action, [Ms. Adamson and Ms. Kirton] opened a new Merrill Lynch account to attempt to preserve what few assets were *203 left in the trusts. In connection with the opening of that new account on October 10, 1995, [Ms.] Adamson and [Ms.] Kirton signed a new account agreement which also contained an arbitration clause. This action was pending at the time although Merrill Lynch had not been named a defendant [nor had Ms. Kirton been named a plaintiff]. Nevertheless, considering all of the existing circumstances at the time, the court finds that the 1995 documents were not an agreement between [Ms.] Adamson and [Ms.] Kirton to arbitrate the claims asserted in this action."
Merrill Lynch maintains that the trial court erred in refusing to compel arbitration of Ms. Kirton's claims, in light of her execution of the broadly worded arbitration agreement in 1995. According to Merrill Lynch, the holding of the trial court overlooks the clear terms of the arbitration clause in the 1995 customer agreement, which, it says, "are decidedly not limited to disputes involving [Ms. Kirton's] joint account." (Emphasis in original.) Rather, Merrill Lynch argues, the breadth of the language of the arbitration clause is "quite clear" and requires the arbitration of "all controversies which may arise between [Merrill Lynch and Ms. Kirton], including but not limited to those involving any transaction or the construction, performance, or breach of this or any other agreement between [Merrill Lynch and Ms. Kirton], whether entered into prior [to], on, or subsequent to the date hereof." We agree.
Ms. Kirton and Ms. Adamson executed the 1995 customer agreement in connection with the creation of their joint account at Merrill Lynch. At her deposition, Ms. Kirton testified that before she signed that agreement, she had just "glanced at it" but that no one had prevented her from reading it. Moreover, she testified, she was represented by counsel when she signed that document. See Burroughs v. Jackson Nat'l Life Ins. Co., 618 So.2d 1329, 1332 (Ala.1993) ("When the plaintiff... [consults an expert in a field] ... [t]he knowledge and understanding of [that] expert are attributed to the plaintiff."). She also testified that she had no personal knowledge whatever of any wrongdoing by Merrill Lynch. Furthermore, Ms. Kirton and Merrill Lynch made no exceptions to their agreement that would have specifically excluded certain types of claims from arbitration. See Ex parte Dyess, 709 So.2d 447 (Ala.1997); Jones v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 604 So.2d 332 (Ala.1991); H.L. Fuller Constr. Co. v. Industrial Dev. Board of the Town of Vincent, 590 So.2d 218 (Ala. 1991); Ex parte Warrior Basin Gas Co., 512 So.2d 1364 (Ala.1987). See, also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985).
The 1995 customer agreement contains a broadly worded arbitration clause that is clear on its faceit covers "any" and "all" controversies that may arise between Merrill Lynch and Ms. Kirtonand, like unambiguous statutes, it leaves no room for interpretation. See, Allied-Bruce Terminix Companies, Inc. v. Dobson, 684 So.2d 102, 103 (Ala.1995) (discussing the rule that general principles of contract law apply to the interpretation of an arbitration provision); Coastal Ford, Inc. v. Kidder, 694 So.2d 1285, 1286 (Ala.1997) (holding that the language of an arbitration clause applying to "all claims, demands, disputes, or controversies of every kind or nature that may arise ... concerning the vehicle" was not ambiguous and was broad enough to encompass the claims at issue); Ex parte Lorance, 669 So.2d 890, 892-93 (Ala.1995) (holding that the language of the arbitration clause"`[a]ny controversy or claim arising out of ...'" was broad enough to encompass the plaintiff's claim alleging fraud in the inducement of the contract); Ex parte Dickinson, 711 So.2d 984 (Ala.1998) (holding that a clause providing for arbitration of "all claims ... and controversies of every kind or nature that may arise between [the Buyer and the Dealer]" was broad enough to cover the plaintiff's claims of conversion and wrongful repossession); Jones v. Merrill Lynch, Pierce, Fenner & Smith, Inc., supra (holding that language in a Merrill Lynch "customer account agreement" that the plaintiff signed upon opening the first accountproviding for arbitration of "any controversy ... arising out of [its] business"applied to the disputed second account even though the plaintiff did not *204 sign a separate customer account agreement for the second account).
See, also the following cases, from other jurisdictions, addressing the effect of broadly worded arbitration provisions on the scope of arbitration: Levine v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 1986 WL 8317 (No. 85 Civ. 8354, S.D.N.Y., July 22, 1986) (not reported in F.Supp.) (in which the district court enforced a similar agreement, stating that "[i]t is difficult to imagine language broader" than the phrase "any controversy"); Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1114 (3d Cir.1993) (in which the Court of Appeals considered arbitration language virtually identical to the language in the 1995 customer agreement now before us and noted that "[c]ourts have broadly construed similar agreements, interpreting them to apply to all disputes between signatories"; Belke v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 693 F.2d 1023 (11th Cir.1982), abrogated on other grounds by Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (in which the Court of Appeals held that Merrill Lynch's arbitration provision was expansive enough to reach controversies that had occurred before the execution of the arbitration agreement); Trott v. Paciolla, 748 F.Supp. 305 (E.D.Pa.1990) (in which the district court held that Merrill Lynch's arbitration agreement contained "broad, sweeping terms [that] clearly encompass claims relating to the [customer account at issue]"); Rand Bond of North America, Inc. v. Saul Stone & Co., 726 F.Supp. 684, 688 (N.D.Ill.1989) (in which the district court held that an arbitration agreement that extended to "any controversy or claim" covered a dispute that had matured before the agreement was signed); Bernstein v. Shearson/American Exp., Inc., 1987 WL 16964 (No. 86 Civ. 5055, S.D.N.Y., Sept. 10, 1987) (not reported in F.Supp.) in which the district court held that an arbitration agreement that covered "any controversy" applied to "disputes regarding transactions in previously established accounts").
Based on the foregoing, we conclude that the language of the arbitration clause in the 1995 customer agreement is broad enough to encompass Ms. Kirton's claims against Merrill Lynch that Merrill Lynch seeks to arbitrate. That is, we conclude that the language of the arbitration provision in the 1995 customer agreement entered into between Merrill Lynch and Ms. Kirton is sufficiently broad to include any and all controversies between them, regardless of the kind of controversy or the date on which the controversy occurred. Therefore, we hold that the trial court erred in refusing to compel arbitration of Ms. Kirton's claims against Merrill Lynch.
Because of our resolution of this question, we pretermit any discussion as to whether Paul Jr., as the trustee of the two trusts of which Ms. Kirton was a residual beneficiary, bound Ms. Kirton to arbitration and as to whether Ms. Kirton was bound by the arbitration provision in the 1989 customer agreements even though she was not a signatory to those agreements.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, COOK, SEE, and LYONS, JJ., concur.
ALMON, SHORES, and KENNEDY, JJ., dissent.
KENNEDY, Justice (dissenting).
I dissent.
The standard of review applicable to cases like this one is the "abuse of discretion" standard. Capital Inv. Group, Inc. v. Woodson, 694 So.2d 1268 (Ala.1997). Both federal courts and state courts have consistently held that the duty to arbitrate is a contractual obligation and that a party cannot be required to submit to arbitration any dispute that he did not agree to submit. AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); Capital Inv. Group, Inc. v. Woodson, supra. Moreover, this Court recently held, in Ryan Warranty Services, Inc. v. Welch, 694 So.2d 1271, 1273 (Ala.1997), that "[a] party to a contract can be forced to arbitrate only those issues he or she specifically agrees to submit to arbitration."
In its order denying Merrill Lynch's motion to compel Kirton to arbitrate her claims, the trial court found, in pertinent part, the following:

*205 "With regard to the 1995 agreement, the dispute before this court does not arise from the account which contains the arbitration agreement between plaintiffs and Merrill Lynch. This dispute was already in litigation when that account was opened. There is no indication that either of the parties intended for the opening of the account in 1995 to constitute a waiver of the plaintiff's right to pursue legal action. It seems clear to the Court that the arbitration agreement entered into between the [plaintiffs] and Merrill Lynch applies to disputes which may arise in connection with plaintiffs' account with Merrill Lynch, not the accounts which are involved in this action.
"The Court finds that there is no agreement between the plaintiffs and Merrill Lynch to arbitrate this action."
I agree.
In Capital Inv. Group, Inc. v. Woodson, 694 So.2d 1268 (Ala.1997), with Justice Houston concurring in the result, this Court dealt with a factually comparable arbitration case in which a plaintiff investor's claims against his broker arose before the plaintiff saw or signed an agreement containing an arbitration provision. In Woodson, this Court specifically stated: "We cannot hold that Woodson agreed to submit anything to arbitration under the Customer Agreement before the agreement was even presented to him." 694 So.2d at 1270. This case is similar to Woodson in that Kirton's claims against her broker, Merrill Lynch, stem from actions that occurred before Kirton was presented with, or signed, the new account documents that contained the arbitration provision. Accordingly, I am of the opinion that this Court should follow the holding established in Woodson and hold that it was not an abuse of discretion for the trial court to deny Merrill Lynch's motion to compel arbitration of Kirton's claims because there was no agreement by Kirton to arbitrate the claims she has brought in this action.
ALMON, J., concurs.
NOTES
[1] In the same order, the trial court stayed all proceedings in the case and transferred the entire action to the "administrative docket" pending the outcome of Ms. Adamson's arbitration. The trial court's basis for ordering arbitration of Ms. Adamson's claims is not at issue in this appeal.