782 So.2d 249 (2000)
Ex parte Ben MORRIS and Gayle Morris.
(Re Benjamin E. Morris and Cynthia Gayle Morris v. Terminix Services, Inc., et al.)
1990485.
Supreme Court of Alabama.
October 27, 2000.
*250 Floyd C. Enfinger, Jr., Montrose, for petitioners.
T. Julian Motes and Michael E. Gabel of Sirote & Permutt, P.C., Mobile; and Fred K. Granade and Samuel N. Crosby of Stone, Granade & Crosby, Bay Minette, for respondent.
BROWN, Justice.
Ben and Gayle Morris are the plaintiffs in a civil action pending in the Baldwin Circuit Court. They petition for a writ of mandamus directing Judge James Reid to vacate his November 29, 1999, order granting a motion of the defendants Terminix Services, Inc., and Allied Bruce-Terminix Company (hereinafter, collectively referred to as "Terminix") to compel arbitration. We deny the writ.
In May 1997, the Morrises purchased a house located at 9671 Pleasant Road in Daphne, from Beulah Berga. Before the Morrises purchased the house, Terminix issued an "Official Alabama Wood Infestation Inspection Report," dated May 1, 1997. That report stated that the house had no visible signs of termite damage or infestation. However, the Morrises discovered substantial termite damage soon after they had purchased the house; Terminix agreed to pay for the work needed to repair that termite damage.
On August 13, 1997, after the damage had been repaired, Terminix issued the Morrises a "Termite Protection Plan." This contract, which contained an arbitration clause, was signed by each of the Morrises, but it was furnished unilaterally by Terminix and it required no initial payment *251 from the Morrises.[1] The arbitration clause stated:
"The Purchaser and Terminix agree that all matters in dispute between them, including but not limited to any controversy or claim between them arising out of or relating to this Agreement or to the identified property [i.e., the Morrises' home] in any way, whether by virtue of contract, tort or otherwise, shall be settled exclusively by arbitration. Such arbitration shall be conducted in accordance with the Commercial Arbitration Rules then in force of the American Arbitration Association."
On September 24, 1997, the Morrises' attorney wrote to Terminix and advised it that the Morrises had found active termites in their house. Terminix retreated the Morrises' house, and it paid for additional repairs to the house in an attempt to put the house in a condition satisfactory to the Morrises. Additionally, Terminix paid a number of incidental expenses associated with the repairs, including cleaning costs and the costs of alternative housing for the Morrises. The total amount Terminix paid for the repairs and incidental expenses was over $30,000.
Despite numerous attempts by Terminix, the Morrises were not satisfied with Terminix's efforts to repair their house, and on April 27, 1999, they sued Terminix in the Baldwin Circuit Court, alleging misrepresentation and negligence or wantonness. The Morrises also asserted in the same action a fraud claim against Berga. On June 3, 1999, Terminix moved to compel arbitration, relying on the arbitration clause in the Termite Protection Plan. On October 6, 1999, the circuit court granted Terminix's motion to compel arbitration. The Morrises filed this petition for the writ of mandamus on December 15, 1999.[2]
The writ of mandamus is a drastic and extraordinary remedy, to be issued only when there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court. Ex parte Horton, 711 So.2d 979, 983 (Ala.1998) (citing Ex parte United Serv. Stations, Inc., 628 So.2d 501 (Ala. 1993)); Ex parte Alfab, Inc., 586 So.2d 889, 891 (Ala.1991) (citing Martin v. Loeb & Co., 349 So.2d 9 (Ala.1977)). Moreover, "`[t]he right sought to be enforced by mandamus must be clear and certain with no reasonable basis for controversy about the right to relief,' and `[t]he writ will not issue where the right in question is doubtful.'" Ex parte Bozeman, 420 So.2d 89, 91 (Ala.1982) (quoting Ex parte Dorsey Trailers, Inc., 397 So.2d 98, 102 (Ala.1981)). "A petition for a writ of mandamus is the proper means by which to challenge a trial court's order granting a motion to compel arbitration." Ex parte Napier, 723 So.2d *252 49, 52 (Ala.1998) (citing Ex parte Phelps, 672 So.2d 790 (Ala.1995)). An order granting a motion to compel arbitration is reviewed under an abuse-of-discretion standard. Capital Inv. Group, Inc. v. Woodson, 694 So.2d 1268, 1270 (Ala.1997).
The Morrises contend that their claims are not subject to the arbitration clause contained in the termite-protection plan because, they contend, their complaint alleges conduct based upon Terminix's representations contained in the Official Alabama Wood Infestation Inspection Report issued on May 1, 1997, which did not contain an arbitration clause. They argue that because the termite damage was discovered before August 13, 1997, the actions complained of in this lawsuit occurred before Terminix issued the protection plan that contained the arbitration clause.
Alternatively, the Morrises contend that their claims are outside the scope of the arbitration clause because, they claim, the plan states that "Terminix is not responsible for the repair of either visible damage or hidden damage existing as of the date of this Agreement." The Morrises claim that this damage was discovered before the date of the agreement and, thus, that it is not covered. Finally, the Morrises cite this Court's opinion in Ex parte Discount Foods, Inc., 711 So.2d 992 (Ala.), cert. denied sub nom Supervalu Inc. v. Discount Foods, Inc., 525 U.S. 825, 119 S.Ct. 71, 142 L.Ed.2d 56 (1998), for the proposition that arbitration provisions in a contract do not extend to disputes that the parties did not agree to arbitrate.
Initially, it would appear that the decision in Terminix International Co. v. Jackson, 723 So.2d 555 (Ala.1998), a case with essentially the same facts[3] as those presented in the Morrises' action, controls the determination of this question. The Jacksons sued Terminix, alleging fraud and negligence arising out of Terminix's issuance of a "termite letter." They also alleged a breach of contract arising out of Terminix's termite-protection plan. The termite-protection plan contained an arbitration clause apparently stating that "The Purchaser and Terminix agree that any controversy or claim between them arising out of or relating to the interpretation, performance or breach of any provision of this agreement shall be settled exclusively by arbitration." See Allied-Bruce Terminix Cos. v. Dobson, 684 So.2d 102, 110 (Ala.1995). This Court held that the Jacksons were required to arbitrate their breach-of-contract claim, but that the claims alleging fraud and negligence were outside the scope of the arbitration clause found in Terminix's termite-protection plan. The Court stated:
"We do note that the termite protection bond provides certain remedies to the Jacksons if new termite infestations occur, whereas the allegations of Counts I and II pertain to an inspection of the house for the sake of issuing a `termite letter' to facilitate the Jacksons' purchase of the house. This is virtually the same situation that was presented in Allied-Bruce Terminix [Cos.] v. Dobson [, 684 So.2d 102 (Ala.1995)].... As in Dobson, we do not see that the activities in regard to the termite letter give rise to claims `arising out of or relating to the interpretation, performance or breach of any provision of the termite protection plan."
723 So.2d at 558.
An examination of the arbitration clause contained in the Morrises' Termite Protection *253 Plan reveals an agreement broader than the one contained in the plaintiffs' plan in Dobson. Whereas the arbitration agreement in Dobson related only to matters arising out of any provision of the termite-protection plan, the arbitration clause in the Morrises' plan covers "any controversy or claim between [the Morrises and Terminix] arising out of or relating to this Agreement or to the identified property in any way, whether by virtue of contract, tort or otherwise."
"[A]n arbitration provision will be enforced in Alabama to the extent that enforcement is required by federal law." Green Tree Fin. Corp. v. Shoemaker, 775 So.2d 149, 150 (Ala.2000). Moreover, cases interpreting the Federal Arbitration Act mandate that a court give the broadest possible interpretation to an arbitration agreement and resolve all doubts in favor of arbitration. A.G. Edwards & Sons, Inc. v. Syvrud, 597 So.2d 197, 200-01 (Ala. 1992). The plain language of the arbitration clause contained in the Termite Protection Plan executed by the Morrises on August 13, 1997, requires them to submit to arbitration "any controversy or claim between [the Morrises and Terminix] arising out of or relating to this Agreement or to the identified property in any way, whether by virtue of contract, tort or otherwise." The claims presented by the Morrises' action are clearly "matters in dispute" between the Morrises and Terminix and are matters that arise out of or relate to the "identified property," namely the Morrises' house at 9671 Pleasant Road in Daphne; thus, the arbitration agreement encompasses the Morrises' claims alleging fraud and negligence or wantonness on the part of Terminix in regard to its issuance of the May 1997 "termite letter."
The Morrises also argue that the arbitration agreement contained in the Termite Protection Plan is unenforceable for want of consideration. However, a similar claim was rejected in Green Tree Financial Corp. v. Vintson, 753 So.2d 497, 502 (Ala.1999), wherein we held that an arbitration agreement is not unenforceable for want of consideration, where there is consideration for the contract as a whole. Moreover, the Morrises subsequently ratified the Termite Protection Plan by paying renewal fees in 1998 and 1999. See Ex parte Rush, 730 So.2d 1175, 1178 (Ala. 1999). The Morrises benefited from the terms of the agreement by accepting additional repairs to their home, as well as by being paid for incidental expenses they incurred during the repair period, including cleaning costs and the cost of alternative housing.
Finally, the Morrises argue that because their claims against Terminix arise out of the May 1997 "termite letter," rather than the August 13, 1997, Termite Protection Plan, they never agreed to arbitrate any claims that arose before the execution of the plan. In Crimson Industries, Inc. v. Kirkland, 736 So.2d 597, 601 (Ala. 1999), this Court rejected a similar contention, holding that parties can agree to arbitrate disputes concerning prior transactions.
Based upon the facts before us, we conclude that the trial court properly granted Terminix's motion to compel arbitration.
WRIT DENIED.
HOOPER, C.J., and MADDOX, HOUSTON, SEE, and LYONS, JJ., concur.
ENGLAND, J., concurs in the result.
COOK and JOHNSTONE, JJ., dissent.
JOHNSTONE, Justice (dissenting).
Suppose we sustain the order to arbitrate. What can the arbitrator do?
*254 The arbitration paragraph expressly states, in pertinent part: "Therefore, the award shall not, and the arbitrator shall not have the power or authority to, hold Terminix responsible for (i) the repair or replacement of any termite damage to the identified property other than new termite damage as defined in this Plan...." (Emphasis added.) The "Termite Protection Plan" containing the arbitration paragraph provides that the definition of "new damage" "excludes damage existing at the inception date." Thus the arbitration paragraph prohibits the arbitrator from holding Terminix responsible for the plaintiffs' termite damage existing before the issuance of the "Termite Protection Plan." That is, the arbitration paragraph prohibits the arbitrator from granting relief on this claim.
While the initial language of the arbitration paragraph is broad, as the main opinion states, this initial broad language is limited by the subsequent particularized prohibition on the power and authority of the arbitrator. See Ex parte Dan Tucker Auto Sales, Inc., 718 So.2d 33, 36 (Ala.1998) ("`[S]pecific terms and exact terms are given greater weight than general language.' Restatement (Second) of Contracts § 203(c) (1981)."); ERA Commander Realty, Inc. v. Harrigan, 514 So.2d 1329, 1335 (Ala.1987) ("When there is a conflict in a contract, the specific substantive provisions control over general provisions."). The express language in the arbitration provision prohibiting the arbitrator from holding Terminix responsible for the preexisting termite damage manifests the parties' intention to exclude the plaintiffs' claim for the preexisting termite damage from the arbitration provisions and therefore effectively does exclude the plaintiffs' claim from the arbitration provisions.
Because the arbitration paragraph prohibits the arbitrator from holding Terminix responsible for the plaintiffs' preexisting termite damage, the effect of the trial court's order to arbitrate is not to determine the appropriate forum for the plaintiffs' claim, but, rather, to destroy the plaintiffs' claim altogether. Nothing in the "Termite Protection Plan" or the arbitration paragraph thereof can be interpreted legitimately as either an accord and satisfaction or a release of the plaintiffs' claim for preexisting termite damage. Any relinquishment or settlement of claims must be clearly and unambiguously expressed. See, e.g., Shadrick v. Johnston, 571 So.2d 1008 (Ala.1990); Smith v. State Farm Mut. Ins. Co., 494 So.2d 7 (Ala.1986).
I further dissent from the holding in the main opinion that the language of this arbitration paragraph is broad enough to apply retroactively to encompass the plaintiffs' claims preexisting the issuance of the "termite-protection plan." While the main opinion correctly cites Crimson Industries, Inc. v. Kirkland, 736 So.2d 597 (Ala.1999), for the "holding that parties can agree to arbitrate disputes concerning prior transactions," 782 So.2d at 253, the particular arbitration language now at issue does not constitute an agreement to arbitrate the preexisting claim. The language now at issue contains no reference to preexisting claims. In this regard, this case is distinguishable from Crimson Industries and each one of the three cases it cites for support. The description in Crimson Industries was "any claims [which] may exist or hereafter arise." 736 So.2d at 601. The "hereafter arise" language implies that the parties intend to include all claims coming into existence at any time over a span of time, both past and future. The critical language in First Family Financial Services v. Rogers, 736 So.2d 553, 555 (Ala.1999), is "your loan from us today; any previous loan." Likewise, the critical language in Merrill Lynch Pierce Fenner *255 & Smith, Inc. v. Kirton, 719 So.2d 201, 203 (Ala.1998), is "any other agreement between [Merrill Lynch and Ms. Kirton], whether entered into prior [to], on, or subsequent to the date hereof." Finally, the critical language in Zink v. Merrill Lynch Pierce Fenner & Smith, Inc., 13 F.3d 330, 331 (10th Cir.1993), is "any controversy between us arising out of your business [which Merrill Lynch had been handling] or this agreement." Neither Crimson Industries, First Family, Kirton, nor Zink supports the proposition that the plaintiffs before us agreed to arbitrate the preexisting claim.
Finally, I respectfully dissent from the main opinion insofar as it cites A.G. Edwards & Sons v. Syvrud, 597 So.2d 197, 200-01 (Ala.1992), for, in part, the proposition that a court "give[s] the broadest possible interpretation to an arbitration agreement." The language in A.G. Edwards does not include the extreme words "broadest possible," and this language will likely cause interpretations not intended by the parties.
For the reasons stated, I would grant the petition for a writ of mandamus and issue a writ directing the trial court to vacate the order to arbitrate.
COOK, J., concurs.
NOTES
[1] Although no initial payment was required from the Morrises, there was a cost for annual renewal of the plan. Terminix's records indicate that the Morrises paid $121.97 on July 28, 1998, and again on July 28, 1999, in order to renew the termite protection plan covering their house.
[2] We note that since the Morrises filed their petition, this Court has amended Rule 21, Ala.R.App.P., to provide that a petition for the writ of mandamus must "be filed within a reasonable time," and that "[t]he presumptively reasonable time for filing a petition seeking review of an order of a trial court shall be the same as the time for taking an appeal." Thus, under the rule as amended, a mandamus petition must be filed within 42 days of the order as to which the petitioner seeks review, unless the party can show good cause for delaying beyond the 42 days. See Ex parte Butts, 775 So.2d 173, 176 (Ala.2000). The amendment to Rule 21 became effective September 1, 2000.
[3] The facts of that case are set out in an earlier appeal, Terminix International Co. v. Jackson, 669 So.2d 893 (Ala.1995).