857 So.2d 97 (2003)
ORKIN EXTERMINATING CO., INC., and John Mosley
v.
Willie D. LARKIN and Vivian M. Larkin.
1012181.
Supreme Court of Alabama.
March 7, 2003.
*99 D. Taylor Flowers and Daniel F. Johnson of Lewis, Brackin, Flowers & Hall, Dothan, for appellants.
J. Michael Rediker, Jr., and Patricia C. Diak of Haskell, Slaughter, Young & Rediker, L.L.C., Birmingham; and Stephen T. Etheredge and Lexa E. Dowling of Buntin, Etheredge & Dowling, L.L.C., Dothan, for appellees.
LYONS, Justice.
Orkin Exterminating Co., Inc. ("Orkin"), and John Mosley, an Orkin employee (hereinafter referred to collectively as "the Orkin defendants"), appeal from the trial court's order enjoining the arbitration proceeding initiated by the Orkin defendants in a dispute with Willie D. Larkin and Vivian M. Larkin ("the Larkins"). Because we conclude that the Larkins' claims fall outside the scope of the Federal Arbitration Act, we affirm.

*100 I. Factual and Procedural History

On November 15, 1999, the Larkins purchased a residence located at 779 Moores Mill Drive in Auburn from Rodney G. Allison and Leigh Allison ("the Allisons"). The Allisons had a preexisting contract with Orkin, entitled "Lifetime Subterranean Termite Retreatment Agreement" ("the termite agreement"), which provided for the treatment and eradication of subterranean termites for the residence. As part of the residential real estate sales contract entered into between the Allisons and the Larkins, the Larkins received an "Official Alabama Wood Infestation Inspection and Report," commonly referred to as a "termite letter," from Orkin. Mosley conducted the inspection and prepared the termite letter.
According to the Larkins' complaint, the termite letter stated that Orkin had previously treated the residence for subterranean termites on September 29, 1997, May 5, 1998, and November 11, 1999. Because the termite letter does not appear in the record, we cannot state its date with certainty, but it presumably was issued on or after November 11, 1999, the date of the last treatment performed pursuant to the termite agreement between Orkin and the Allisons, and on or before November 15, 1999, the date of the closing. The termite letter stated that the termite agreement between Orkin and the Allisons was transferable to the Larkins and that the residence was free from any evidence of active infestation of the five specified wood-destroying organisms, including subterranean termites. The termite letter also showed the location of previous termite infestation in the residence. The Larkins allege that they purchased the residence in reliance upon the guarantees provided by the Orkin defendants in the termite letter.
On November 23, 1999, September 13, 2000, and on August 15, 2001, Willie Larkin paid the annual fee to renew the termite agreement previously entered into between Orkin and the Allisons. The termite agreement included the following arbitration provision:
"Arbitration: Any dispute arising out of or relating to this agreement or the services performed under this agreement or tort based claims for personal or bodily injury or damage to real or personal property shall be finally resolved by arbitration administered under the commercial arbitration rules of the American Arbitration Association. This agreement involves interstate commerce; furthermore, the parties expressly agree that their mutual rights and obligations and the conduct of any arbitration proceeding shall be controlled by the Federal Arbitration Act. The award of the arbitrator shall be final, binding, nonappealable and may be entered and enforced in any court having jurisdiction in accordance with the Federal Arbitration Act. The arbitrator shall not have the power or authority to award exemplary, treble, liquidated or any type of punitive damages."
At some point after the residence was purchased, the Larkins claimed that the residence was infested with active termites, that the Orkin defendants withheld that fact from them, and that they would not have purchased the residence had the Orkin defendants been truthful in the termite letter about the condition of the residence. On October 25, 2001, the Larkins sued Orkin for its actions related to the termite letter, alleging breach of contract, fraud, fraudulent suppression, negligence, and fraudulent misrepresentation. The Larkins also sued Mosley, alleging fraudulent misrepresentation and fraudulent suppression. The Larkins sought compensatory *101 and punitive damages.[1]
The Orkin defendants filed a motion to compel arbitration, claiming that the arbitration clause in the termite agreement that it had originally entered into with the Allisons and that had been renewed by Willie Larkin was sufficiently broad to encompass the Larkins' claims and that the "transaction at issue" involved interstate commerce. The trial court denied the motion to compel arbitration. The defendants filed this appeal.

II. Standard of Review
An appeal is the proper method by which to challenge a trial court's denial of a motion to compel arbitration. Patrick Home Ctr., Inc. v. Karr, 730 So.2d 1171, 1172 (Ala.1999). "[T]he standard of review of a trial court's ruling on a motion to compel arbitration at the instance of either party is a de novo determination of whether the trial judge erred on a factual or legal issue to the substantial prejudice of the party seeking review." Ex parte Roberson, 749 So.2d 441, 446 (Ala.1999); Ex parte Southern United Fire Ins. Co., 843 So.2d 151 (Ala.2002).

III. Analysis

A. Overview of Contentions
The Larkins contend that their claims are not subject to the arbitration provision included in the termite agreement because, they say, they never agreed to arbitrate the claims asserted in their complaint. Alternatively, the Larkins argue that their claims are outside the scope of the arbitration clause and the scope of the Federal Arbitration Act ("the FAA"). Finally, the Larkins argue that the underlying dispute does not affect interstate commerce and that, even if it did, the arbitration clause in the termite agreement is unconscionable.
The Orkin defendants argue that the Larkins' claims are subject to arbitration because, they say, the arbitration clause in the termite agreement is sufficiently broad to apply retroactively to the Larkins' claims made pursuant to the termite letter. The Orkin defendants cite this Court's opinion in Ex parte Morris, 782 So.2d 249 (Ala.2000), for the proposition that broad arbitration provisions can have retroactive application. They contend that the termite agreement substantially affects interstate commerce so as to invoke the FAA.
The Orkin defendants have "the burden of proving the existence of a contract requiring arbitration and proving that that contract involves a transaction that substantially affects interstate commerce." Mostella v. N & N Motors, 840 So.2d 877, 880 (Ala.2002); Liberty Nat'l Life Ins. Co. v. Douglas, 826 So.2d 806 (Ala.2002); Sisters of the Visitation v. Cochran Plastering Co., 775 So.2d 759 (Ala.2000).

B. The Existence of an Agreement to Arbitrate
The Larkins initially contend that no contract to compel them to arbitrate their claims exists because they never signed the termite agreement and because, therefore, the termite agreement lacks mutuality of assent. We disagree.
The mere fact that the Larkins did not sign the termite agreement does not preclude its enforceability. Ex parte Rush, 730 So.2d 1175, 1178 (Ala.1999). Absent a signature, "the existence of a contract may... be inferred from other external and *102 objective manifestations of mutual assent." 730 So.2d at 1178. In Rush, the Rushes sued a termite company based upon the company's performance under a termite agreement similar to the one in this case. 730 So.2d at 1176. Under the agreement, the company agreed to protect the Rushes' residence from subterranean termites, to reinspect the residence periodically, and to repair damage from any new infestation. 730 So.2d at 1176. The Rushes paid the annual renewal fee, made a claim under the agreement, and supervised the company's repairs to their residence. 730 So.2d at 1178. We held that the Rushes' conduct, absent their signature, evidenced an assent to the termite agreement, including its arbitration clause. 730 So.2d at 1178. Moreover, in Morris, supra, we held that the arbitration clause in the termite agreement was not lacking in consideration because the Morrises "benefited from the terms of the [termite] agreement by accepting additional repairs to their home, as well as by being paid for incidental expenses they incurred during the repair period, including cleaning costs and the cost of alternative housing." 782 So.2d at 253.
The Larkins contend that no mutuality of assent existed because, they say, unlike the homeowners in Rush and Morris, they received no benefit in the form of repairs or treatments under their termite agreement with the Orkin defendants. Generally, mutuality does not necessarily mean "equal rights under a contract, or that each party is entitled to the same rights or covenants under the contract. So long as there is a valuable consideration moving from one side to the other, or there are binding promises on the part of each party to the other, there is adequate consideration for a valid contract." Marcrum v. Embry, 291 Ala. 400, 403, 282 So.2d 49, 52 (1973).
It is undisputed that the Larkins, by paying the annual renewal fees, assumed the termite agreement entered into between Orkin and the Allisons. See Morris, 782 So.2d at 253. According to the affidavit of Verne Sanford, the office manager of Orkin's Montgomery office, Willie Larkin paid the annual renewal fee on November 23, 1999, September 13, 2000, and August 15, 2001. As was the case in Morris, the Larkins "ratified" the termite agreement by paying the renewal fees. 782 So.2d at 253. Moreover, the termite agreement provides that "Orkin will retreat the structure for Subterranean Termites at no cost to [the] Customer if an infestation of Subterranean Termites is found." The termite agreement also provides that "Orkin shall reinspect the treated structure as deemed necessary by Orkin or requested by the Customer." Therefore, the obligation of the Orkin defendants to re-treat and reinspect the residence is a binding promise in return for receipt of the Larkins' payment of the annual fee to renew the termite agreement. The fact that the Larkins had received no benefit from the termite agreement in the form of actual repairs or treatment is immaterial to establish mutuality. See Marcrum, 291 Ala. at 406, 282 So.2d at 54 (finding that the parties' promises established mutuality despite the fact that the promises were not coextensive).

C. The Scope of the Arbitration Provision
The Larkins alternatively contend that even if they are contractually bound by the arbitration clause in the termite agreement, they cannot be compelled to arbitrate their claims, which they say arose from actions related to the termite letter. The Larkins contend that their claims are not within the scope of the arbitration provision in the termite agreement Orkin *103 initially issued to the Allisons and that the Larkins subsequently renewed.
The United States Supreme Court has held that "[s]tates may regulate contracts, including arbitration clauses, under general contract law principles and they may invalidate an arbitration clause `upon such grounds as exist at law or in equity for the revocation of any contract.'" Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 281, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) (quoting 9 U.S.C. § 2) (emphasis omitted). It is well established that "the interpretation of an arbitration agreement within the scope of the [FAA]" is governed by "general state-law principles of contract interpretation." Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 475, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). "Agreements to arbitrate are essentially creatures of contract," and ordinary contract rules govern the interpretation of arbitration provisions. Blount Int'l, Ltd. v. James River-Pennington, Inc., 618 So.2d 1344, 1346 (Ala.1993). See also Kenworth of Dothan, Inc. v. Bruner-Wells Trucking, Inc., 745 So.2d 271, 275 (Ala.1999) ("In reviewing arbitration provisions, we apply contract principles."); First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).
Applying general contract principles, we have compelled the arbitration of disputes arising out of a previous transaction when it was clear that the parties in a subsequently executed arbitration agreement intended to arbitrate such disputes based upon the broad scope of the arbitration clause at issue.[2] Compare Morris, supra, 782 So.2d at 253; Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Kirton, 719 So.2d 201 (Ala.1998) (the language of the arbitration provision indicated that disputes related to prior transactions were to be arbitrated); and Thompson Tractor Co. v. Fair Contracting Co., 757 So.2d 396, 399 (Ala.2000) ("When an arbitration clause clearly indicates that disputes related to prior transactions are to be arbitrated, those disputes must be arbitrated when one of the parties to the transaction demands arbitration."), with Kenworth, supra, 745 So.2d at 275 (concluding that the language of the arbitration provision failed to indicate an intention of the parties to arbitrate a prior transaction), and Terminix Int'l Co. v. Jackson, 723 So.2d 555, 558 (Ala.1998) (concluding that the language of the arbitration clause did not encompass actions related to a termite letter issued before the document containing the arbitration clause was effective). The scope of the arbitration clause is a question of the intent of the parties. Kenworth, 745 So.2d at 275 (in reviewing an arbitration provision a court must determine whether there was a "meeting of the minds").
The United States Court of Appeals for the Eleventh Circuit has also allowed parties to arbitrate preexisting controversies when the language of the arbitration provision is sufficiently broad to encompass the prior claims. Belke v. Merrill Lynch, Pierce, Fenner & Smith, 693 F.2d 1023, 1028 (11th Cir.1982) (finding that the appellee's claims, which occurred before the arbitration agreement was executed, were arbitrable because "[b]y its own terms the contract between the parties covers not only disputes arising out of the agreement, but in the disjunctive includes `any controversy between us arising out of your business'") (emphasis in Belke omitted), overruled *104 on other grounds, Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985).
In salient part, the arbitration clause in the termite agreement provides:
"Any dispute arising out of or relating to this agreement or the services performed under this agreement or tort based claims for personal or bodily injury or damage to real or personal property shall be finally resolved by arbitration...."
(Emphasis added.) The Orkin defendants argue that the arbitration provision in the termite agreement is "virtually identical" to the arbitration clause we upheld in Morris, supra. In Morris, the Morrises received a termite letter from the defendant, Terminix, when they purchased a residence. 782 So.2d at 250. The Morrises later signed a termite agreement with Terminix; that agreement contained the following arbitration clause:
"`The Purchaser and Terminix agree that all matters in dispute between them, including but not limited to any controversy or claim between them arising out of or relating to this Agreement or to the identified property [i.e., the Morrises' home] in any way, whether by virtue of contract, tort or otherwise, shall be settled exclusively by arbitration.'"
782 So.2d at 251 (bracketed language original; emphasis added). As did the Larkins, the Morrises discovered termite damage after they had purchased their residence, and they sued Terminix, alleging misrepresentation and negligence or wantonness based upon Terminix's conduct in issuing the termite letter. 782 So.2d at 251. In Morris, we acknowledged that "`an arbitration provision will be enforced in Alabama to the extent that enforcement is required by federal law.'" 782 So.2d at 253 (quoting Green Tree Fin. Corp. v. Shoemaker, 775 So.2d 149, 150 (Ala.2000)). We held that the Morrises' claims were "matters in dispute" that arose out of or that were related to the "identified property," and that, thus, their claims arising out of the termite letter were subject to arbitration. 782 So.2d at 253.
Whereas the arbitration agreement in Morris related to all "matters of dispute" involving the "identified property ... by virtue of contract, tort or otherwise," 782 So.2d at 251, the arbitration provision in the termite agreement in this case covers "tort based claims for personal or bodily injury or damage to real or personal property." 782 So.2d at 253 (emphasis added). Therefore, at first blush it appears that just as the arbitration clause in Morris was sufficiently broad to compel arbitration of the Morrises' claims related to the termite letter, the arbitration provision in the present action is sufficiently broad to encompass, at a minimum, the Larkins' tort-based claims.
However, the present action is distinguishable from the action in Morris as well as in other cases in which we have compelled arbitration of disputes arising from previous transactions based upon the broad scope of a later-executed arbitration clause. See, e.g., Kirton, supra, 719 So.2d at 204; Thompson, supra, 757 So.2d at 399-400.

D. The Scope of the FAA
The Larkins also contend that, regardless of the scope of the arbitration provision, their claims fall outside the scope of the FAA because, they contend, the FAA "only addresses the validity of arbitration provisions that relate to controversies that arise subsequent to the contract containing the arbitration agreement." Larkins' brief at p. 20.
Section 2 of the FAA provides:

*105 "A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."
9 U.S.C. § 2 (emphasis added). Our prior decisions have not addressed either the "thereafter arising" or the "existing controversy" language of § 2 of the FAA. Therefore, our prior decisions deal with principles of contract interpretation, focusing on the scope of the arbitration agreement. The Larkins insist that we must also deal with the scope of the FAA because, if the FAA is not applicable, the enforcement of the arbitration provision is governed by State law. Under the express language of the FAA, parties can agree to arbitrate future controversies or existing controversies that arise out of the contract or transaction at issue. 9 U.S.C. § 2.
The gravamen of the Larkins' complaint involves the Orkin defendants' actions in issuing the termite letter, a document that did not contain an arbitration provision. The Larkins' theories of breach of contract, fraud, fraudulent suppression, negligence, and fraudulent misrepresentation relate exclusively to the termite letter. The termite letter was issued before the Larkins assumed the termite agreement, and the termite agreement is the only document containing a provision calling for the arbitration of disputes. Consequently, the Orkin defendants' conduct with reference to the termite letter upon which the complaint is entirely based cannot be subject to arbitration under the first part of 9 U.S.C. § 2, which enforces a "written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of [the contract containing the provision for arbitration]." 9 U.S.C. § 2 (emphasis added). The complaint describes a controversy that did not arise out of the termite agreement.
In their brief to this Court, the Orkin defendants argue that "the fact that the termite [agreement] [was] entered into after the `termite letter' [was] prepared is of no legal significance." We disagree. The Orkin defendants cite no authority for such a broad interpretation of the "thereafter arising" language of § 2 of the FAA, and we know of no authority that could provide such a broad interpretation.[3] It would be a strained reading of the FAA as well as circuitous logic to make a dispute over arbitrability a dispute "thereafter arising out of" a contract containing the arbitration provision.
The second portion of 9 U.S.C. § 2 provides for enforcement of "an agreement in writing to submit to arbitration an existing controversy arising out of [a contract involving interstate commerce]." Although this Court has not defined "existing controversy arising out of such a contract," cases from other jurisdictions upholding agreements to arbitrate under the FAA and the Federal Securities Act because of an existing controversy have involved facts that indicate that at the time the arbitration agreement was entered into, the parties had knowledge or an understanding of *106 the existing controversy.[4] Compare Coenen v. R.W. Pressprich & Co., 453 F.2d 1209 (2d Cir.1972) (holding that the plaintiff was required to arbitrate his claim, which accrued before he became bound by the arbitration rules of the New York Stock Exchange, because he was fully aware of the existing claim at the time he became a member of the Exchange and became bound by its arbitration rules), with De Lancie v. Birr, Wilson & Co., 648 F.2d 1255, 1258 (9th Cir.1981) (holding that that plaintiff's claims, which accrued before he became bound by the arbitration rules of the Pacific Stock Exchange, were not arbitrable because the record contained "little, if any" evidence to show that the plaintiff knew of the existing controversy when he became bound by the arbitration rules).
In the present action, the Larkins claim that the Orkin defendants "improperly and inadequately" treated the residence within four days before the issuance of the termite letter. However, they claim that they did not learn that the Orkin defendants were "grossly deficient" in their termite treatments "until some time" after they purchased their residence. Although the Larkins contend that the Orkin defendants knowingly concealed termite damage, nothing in the record indicates that the Orkin defendants or the Larkins were aware of the allegedly inadequate termite treatment before the Larkins assumed the termite agreement and at the time the Larkins renewed the termite agreement in 2000 and 2001. In fact, we cannot determine whether either party had actual knowledge of the alleged improper termite treatment until the complaint was filed in the present action on October 25, 2001, over two months after the termite agreement was renewed for the last time. The Orkin defendants, as the parties compelling arbitration, have the burden of proving the existence of a contract calling for arbitration of the claims presented. Brookfield Constr. Co. v. Van Wezel, 841 So.2d 220 (Ala.2002). Incumbent upon the Orkin defendants was the obligation to offer evidence that would trigger the applicability of the FAA to the contract. Based upon the silent record, we cannot conclude that a controversy existed when the termite agreement was first assumed and was then subsequently renewed; therefore, we cannot assume coverage under the FAA.[5]
We emphasize that our holding should not be interpreted as overruling our prior decisions dealing with the scope of an arbitration agreement in a setting where coverage under the FAA was not addressed. While the scope of the FAA was not addressed in Morris, supra, several factors indicate that a controversy existed at the time the Morrises signed the termite agreement that would bring the Morrises' claims within the scope of the FAA. After the termite letter was issued, yet before they entered into the termite agreement with Terminix, the Morrises discovered substantial termite infestation. Morris, *107 782 So.2d at 250. Furthermore, before the termite agreement was signed by the Morrises, Terminix paid for the damage to the residence. 782 So.2d at 250. Unlike the substantial contacts between the Morrises and Terminix in Morris, the record in the present action does not indicate that the Orkin defendants made any repairs to or treated the Larkins' residence pursuant to the termite agreement before the termite agreement was assumed by the Larkins, or at any time thereafter. Therefore, even though coverage under the FAA was not addressed in Morris, it appears that a controversy existed at the time the termite agreement was signed by the Morrises because both parties had knowledge of the termite infestation and the damage from the infestation at the time the agreement was signed.
We recognize that "`any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration....'" SouthTrust Sec., Inc. v. McClellan, 730 So.2d 620, 622 (Ala.1999) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. at 24-25, 103 S.Ct. 927). However, the rule of construction in favor of arbitration does not give us authority to rewrite the scope of the FAA. We are bound by the express language of § 2 because "where the language of a statute is unambiguous, the clearly expressed intent must be given effect, and there is no room for construction." James v. Todd, 267 Ala. 495, 504, 103 So.2d 19, 27 (1957); State v. Bay Towing & Dredging Co., 264 Ala. 187, 189, 85 So.2d 890, 892 (1955).
Justice See's special concurrence is premised on the theory of the exclusivity of a remedy in contract and thus the unavailability of a remedy in tort. The special concurrence asserts that the Larkins have failed to plead any claims that indicate that the Orkin defendants owed them a duty. However, this Court has recognized liability of a person in tort for furnishing information for the guidance of others in their business transactions when that person can reasonably anticipate that a third party would rely on that information. See Fisher v. Comer Plantation, Inc., 772 So.2d 455 (Ala.2000) (recognizing the adoption of the Restatement (Second) of Torts § 552 (1977) in Boykin v. Arthur Andersen & Co., 639 So.2d 504 (Ala.1994), and holding that a real estate appraiser had a duty to third parties that the appraiser intended to influence and to third parties that the appraiser knew his client intended to influence by means of the appraisal). Moreover, the analysis of the Larkins' contract claim in the special concurrence asserts that a contract claim, if properly pleaded, would be arbitrable because the termite letter was provided "according to the terms of [Orkin's] agreement [containing an arbitration clause] with [the Allisons]." 857 So.2d at 109. However, nothing in the termite agreement between the Allisons and Orkin calls for the issuance of an "Official Alabama Wood Infestation Inspection and Report," also known as a termite letter, to assist the Allisons in the sale of their home.

IV. Conclusion
Because the Larkins' claims do not involve a future controversy arising out of the termite agreement, and because the Orkin defendants have not shown that there was a controversy existing when the termite agreement was assumed and later renewed, § 2 of the FAA does not require arbitration. The trial court properly denied the Orkin defendants' motion to compel arbitration.
AFFIRMED.
HOUSTON, BROWN, JOHNSTONE, HARWOOD, and WOODALL, JJ., concur.
SEE, J., concurs specially.
*108 MOORE, C.J., concurs in the result.
STUART, J., dissents.
SEE, Justice (concurring specially).
I concur specially.
The main opinion states:
"The gravamen of the Larkins' complaint involves the Orkin defendants' actions in issuing the termite letter, a document that did not contain an arbitration provision. The Larkins' theories of breach of contract, fraud, fraudulent suppression, negligence, and fraudulent misrepresentation relate exclusively to the termite letter."
857 So.2d at 105. The main opinion concludes that because the termite letter does not contain an arbitration clause, Orkin may not compel the Larkins to arbitrate their claims arising from the termite letter. The main opinion also states that the Court disagrees with the Orkin defendants' argument "that `the fact that the termite [agreement] [was] entered into after the "termite letter" [was] prepared is of no legal significance.'" 857 So.2d at 105.
I agree with the Orkin defendants' argument that, had the Larkins presented facially valid claims concerning the termite letter, then the fact that the Larkins entered into a termite agreement after the termite letter was issued would be of no legal significance in determining whether the Larkins were compelled to arbitrate their dispute with Orkin, because the termite letter arises from a contract with a valid arbitration clause. The Larkins, however, have failed to state a valid claim against Orkin arising from the termite letter; therefore there is nothing for Orkin and the Larkins to arbitrate.
The Larkins state in their complaint that they entered into a real-estate purchase contract with the Allisons. Paragraph 16 of the Larkins' complaint describes the circumstances that give rise to the Larkins' relationship with Orkin:
"On or about November 15, 1999, [the Larkins], as part of the Residential Real Estate Sales Contract entered into by and between [the Larkins] and Defendants, Rodney G. Allison and Leigh Allison, received, with the intent that they should rely thereon, an Official Alabama Wood Infestation Inspection and Report [the `termite letter'] from Orkin for and relating to the residence."
Elsewhere in the complaint the Larkins make conclusory statements that Orkin breached legal duties arising from the termite letter; nowhere do the Larkins state that they had a contractual relationship with Orkin apart from any relationship created by the termite letter. Nothing in the complaint indicates that the Larkins had any direct contact with Orkin in regard to the termite letter before closing their real estate transaction with the Allisons.
Justice Harwood's special concurrence in Allied-Bruce Terminix Cos. v. Butler, 816 So.2d 9, 17-18 (Ala.2001)(Harwood, J., concurring specially), explains this circumstance:
"The same legal analysis was applied by this Court in a very similar situation, albeit not one involving an issue of arbitration. In Rumford v. Valley Pest Control, Inc., 629 So.2d 623 (Ala.1993), the real estate purchase agreement for a residence required the sellers to procure and to pay for a letter stating that the property was free and clear of termite infestation and damage. The sellers, who had a preexisting service contract with a pest-control company, engaged that company to inspect the house and to issue the required letter, which the company did, and the letter was produced at the loan closing. Subsequently, *109 the purchasers discovered termite infestation. They sued the sellers and the pest-control company, alleging various claims of fraud and breach of contract. This Court agreed that the purchasers were due to be accorded the status of third-party beneficiaries to the contract between the sellers and the pest-control company, and reversed the summary judgment the trial court had entered in favor of the pest-control company.
"In the present case, likewise, the contract providing for the inspection and issuance of the Report was solely between Mr. Ritz and Terminix Service. Thus, the Butlers can maintain their claim against Terminix Service for breach of contract only by presenting themselves as third-party beneficiaries of the contract between Terminix Service and the Ritzes, and that contract relates back to the Agreement [that contained an arbitration clause]."
The Larkins did not have a contractual relationship with Orkin until after the closing, when the Larkins and Orkin subsequently signed their termite agreement. The Larkins fail to plead any claims that would cause Orkin to owe them a duty.[6]
The Larkins argue in their brief that "the inspection report is a `stand alone' document which can be issued without any subsequent purchase of termite protection services.[[7]] Similarly, Orkin will issue a termite guarantee even if a different company issued the Wood Infestation Inspection Report." That allegation, while perhaps true, is irrelevant. The Larkins admit in their complaint that the Allisons procured the termite letter from Orkin. The Larkins admit in their brief that the Allisons had a contract with Orkin. Therefore, hypothetical arguments about things Orkin might do are irrelevant in determining what kind of relationship Orkin had with the Larkins. In this case, Orkin provided a termite letter for an existing customer according to the terms of its agreement with that customer. The Orkin customer, the Allisons, provided that letter to the prospective buyer of their home, the Larkins.
Either the Larkins have no relationship with Orkin and therefore Orkin owes them no duty,[8] or, alternatively, there is a relationship between the Larkins and Orkin that derives from the Allisons' contract with Orkin, in which case the Larkins are third-party beneficiaries of the Allisons' *110 contract and are, therefore, obliged by the terms of the contractual relationship from which they seek to benefit to arbitrate their claims with Orkin. See Ex parte Stamey, 776 So.2d 85, 92 (Ala.2000) ("third-party beneficiary cannot both claim the benefit of the contract and avoid the arbitration provision contained within that contract").
I, therefore, concur with the main opinion that Orkin is not entitled to compel arbitration and that the trial court's judgment is due to be affirmed because "the Larkins' claims do not involve a future controversy arising out of the termite agreement." 857 So.2d at 107. I reach this conclusion because the Larkins have presented no valid claims against Orkin arising from the termite agreement.
NOTES
[1] The Larkins also sued Sandy Stinson, the real-estate agent who had sold them the residence; Gloria Nicholson, the real-estate broker for the sale of the residence, both individually and d/b/a First Realty; and Jennings Construction Company, Inc., a company that had inspected the residence before the closing. These parties, however, are not involved in this appeal.
[2] Our previous cases do not address the effect of the timing of the occurrence of the dispute in relation to the time of execution of the agreement containing the arbitration provision on the applicability of the FAA. See Part III.D.
[3] "[I]t is neither this Court's duty nor its function to perform an appellant's legal research." City of Birmingham v. Business Realty Inv. Co., 722 So.2d 747, 752 (Ala.1998); Green Tree Fin. Corp. of Alabama v. Vintson, 753 So.2d 497, 503 n. 5 (Ala.1999).
[4] The FAA creates a "body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [FAA]." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).
[5] "Section 8-1-41(3), Ala.Code 1975, prohibits specific performance of pre-dispute agreements to arbitrate," thereby making void any agreement to arbitrate future, as opposed to present, disputes. Ex parte Kampis, 826 So.2d 819, 824 (Ala.2002); McConnell Auto. Corp. v. Jackson, 849 So.2d 159, 170 n. 9 (Ala.2002) (See, J., dissenting). Therefore, the Larkins could not be compelled to arbitrate their claims under State arbitration law because, for all that appears, a "present" controversy did not exist at the time they assumed or renewed the termite agreement.
[6] The Larkins allege both contract and tort claims. The Larkins might argue under Fisher v. Comer Plantation, Inc., 772 So.2d 455 (Ala.2000), that Orkin owed them some kind of third-party duty. Such a claim, however, requires the Larkins to seek the benefit of the Allisons' relationship with Orkin.
[7] The Larkins offer no facts in support of the proposition that Orkin will issue a termite letter to a party who has not signed an arbitration agreement.
[8] When evaluating whether a party has a duty to speak, we must consider several factors: (1) the relationship between the parties; (2) the relative knowledge of the parties; (3) the value of the particular fact; (4) the plaintiff's opportunity to ascertain the fact; (5) customs of the trade; and (6) other relevant circumstances. State Farm Fire & Cas. Co. v. Owen, 729 So.2d 834, 843 (Ala.1998). Superior knowledge of a fact, by itself, does not give rise to a duty to disclose. Id. Nor does mere silence constitute fraud, unless the party remaining silent has a duty to disclose. Keck v. Dryvit Sys., Inc., 830 So.2d 1 (Ala.2002). The Larkins did not have a direct contractual relationship with Orkin until after the closing. Orkin, in accordance with its contract with the Allisons, delivered a termite letter to them; the Larkins, therefore, knew, before closing, about prior termite activity in at least two areas of the home. And the Larkins had the opportunity to hire an independent inspector to inspect for termites before closing. Therefore, Orkin did not owe any further duty of disclosure to the Larkins.